122 N.J. Super. 184 (1973)
299 A.2d 751
BAYSHORE SEWERAGE COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
DEPARTMENT OF ENVIRONMENTAL PROTECTION, STATE OF NEW JERSEY, AN AGENCY OF THE STATE OF NEW JERSEY, TOWNSHIP OF HAZLET, A MUNICIPAL CORPORATION OF NEW JERSEY, HAZLET TOWNSHIP SEWERAGE AUTHORITY, A PUBLIC AUTHORITY OF NEW JERSEY, AND BAYSHORE REGIONAL SEWERAGE AUTHORITY, A PUBLIC AUTHORITY OF NEW JERSEY, AND STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 15, 1973.
*187 Mr. William R. Holzapfel for plaintiff.
Mr. Morton I. Greenberg for defendant Department of Environmental Protection and State of New Jersey.
Mr. John E. Holobinko for defendants Township of Hazlet and Hazlet Township Sewerage Authority.
Mr. William J. O'Hagan, Jr. argued the cause for defendant Bayshore Regional Sewerage Authority.
*188 McGOWAN, J.S.C.
This matter was tried before the court as a result of a complaint filed by plaintiff Bayshore Sewerage Company, appealing from an order of the Department of Environmental Protection of the State of New Jersey dated February 3, 1971 issued to the plaintiff. The appeal is taken under the provisions of N.J.S.A. 58:12-2 which, at the time of the institution of this action, provided in part as follows:
Any person, corporation or municipality aggrieved by the finding of the department may bring a civil action in the Superior Court at any time within three months after being notified thereof, and said court may hear and determine such action in which the court may proceed in a summary manner or otherwise, and thereupon may affirm the finding of the department or reverse or modify the finding in whole or in part as the court shall deem just and reasonable.
It is to be noted that by chapter 44 of the Laws of 1972 this section was amended, effective June 1, 1972, to delete the provision for the bringing of a civil action in the Superior Court and providing instead that any person aggrieved by such order of the Department would be entitled to a hearing before the Department upon notice, rather than to bring an action such as the one herein. Motion was made on behalf of all defendants at the close of plaintiff's case, and the defense was previously raised, that plaintiff had not exhausted its administrative remedies and therefore was not entitled to relief in this action. However, no application was made to have the matter heard by the Department. The court reserved decision on the motion and proceeded to a full hearing, so that now a complete record is available. It is the court's determination that such motions should be denied and that the defenses are without merit for the reason that at the time the action was instituted this was the legislatively directed action and procedure to be taken, and under all the circumstances of this case, taking into consideration the position of the State Department of Environmental Protection, to require plaintiff to go before the Department for a hearing would be a useless procedure. The Court should assume *189 and does assume jurisdiction. The argument made that the original order here involved was issued without hearing is now without merit by reason of the present litigation.
The background of the incidents giving rise to this litigation is of the utmost importance to a full understanding of the issues involved. The following determination of facts is hereby made, although for the most part practically all of these facts have been conceded in some fashion or other and are not really in dispute. Plaintiff is the owner of a sewage treatment plant and a collection system within a franchised area located in the Township of Hazlet in the County of Monmouth and State of New Jersey serving approximately 2200 customers. Most of its customers are within the franchised area but approximately 300 are located outside of the franchised area. It is a public utility corporation employing rates and franchises as have been heretofore granted by the State Board of Public Utility Commissioners since its original inception in 1957. The State Department of Health, predecessor to defendant Department of Environmental Protection, issued the original permit for the construction of the plant and approved the plans for the construction thereof on February 1, 1957, and thereafter issued and granted subsequent permits which in effect authorized additional connections to be made and additional sewage to be treated. The initial plant as constructed had the capacity to serve 1500 homes. The original permit for construction contained certain conditions in the permit issued which allowed the construction of the treatment plant for "the purpose of releasing the sewage into `Flat Creek' a tributary of Raritan Bay." The pertinent conditions, among others, are the following:
(1) That the permit is revocable or subject to modification or change at any time when in the judgment of the State Department of Health of the State of New Jersey such revocation, modification or change shall be necessary.
(2) That the issuance of this permit shall not be deemed to effect in any way action by the State Department of Health of the State of New Jersey on any future applications that may be made for permission to discharge additional sewerage or industrial *190 wastes into the waters of the State.
(9) That this permit to construct a sewerage treatment plant herein referred to does not exempt or shall not be construed to exempt the applicant Bayshore Sewerage Company Inc., 250 Mechanics Street, Red Bank, New Jersey, from complying with the rules or regulations and policies or laws lodged in any agency or division in this state having legal jurisdiction.
In addition to these stated provisions there were certain requirements in regard to the amount, type and quality of effluent that was to be discharged into Flat Creek, and there were certain requirements with regard to the biochemical oxygen of the effluent, referred to as B.O.D. With the issuance of the building permit there was also issued a use permit which contained identical conditions. As before stated, several permits were thereafter issued from time to time for construction and use permitting additional sewage to be processed, beginning on May 22, 1957 and down to and including August 27, 1964, totaling 12 in all. All of these contain the same conditions set forth in the original permit. The permit of August 27, 1964 was issued pursuant to an application made to construct additions and alterations to the existing treatment plant which, if completed, would have provided facilities for the treatment of approximately 3000 homes instead of the 1500 homes originally authorized. This permit had a provision, as had all the other building permits referred to, providing "the approval of plans and/or other engineering data for the above work shall remain in force for a period of only two years from the date of approval unless the said works are constructed or the contract awarded for the construction of such works."
I find that admittedly the work under this permit was never completed at any time although some minor work was done in order to keep the plant functional which did not however constitute any enlargement of the facilities. In 1965, the Legislature enacted L. 1965, c. 121, and this law is known as "State Public Sanitary Sewerage Facilities Act of 1965." A statement of intent is included in the act which *191 provided that it was the "public policy of the State of New Jersey to encourage and support, as hereinafter provided, the promotion, planning, development and construction of public sanitary sewerage facilities, including sewage collection, transmission, treatment and disposal works on a regional or multi-unit basis." N.J.S.A. 26:2E-2. In the interim, and going back to about the year 1962 or 1963, as was conceded by plaintiff's witnesses, Nero and Kinkade, the plant was not able to efficiently treat the sewage it was collecting and admittedly was then and is now in violation of the conditions of the permits issued with respect to the quality of the effluent being discharged into Flat Creek.
Flat Creek empties into Raritan Bay. Raritan Bay is a tidal body of water and Flat Creek is tidal for about half its distance from Raritan Bay to plaintiff's treatment plant, which is located approximately 1 1/2 miles from the Bay. On April 6, 1966, the State Department of Health issued an order to plaintiff to improve its plant by the construction of certain additions for which a permit had been issued, as before stated, in 1964 and which additions, as before stated, have not in fact ever been constructed. On April 19, 1967 the State Department of Health revoked the building permit it had issued on August 27, 1964, and reference was made in the letter of revocation that sewage would now be handled by the regional plant in the area under the now state-wide policy of regionalization.
In the meantime, it appears that in 1966 the Township of Hazlet had created a municipal sewerage authority, and negotiations were going on with this authority, which had succeeded to the township committee of the Township of Hazlet (formerly known as Raritan Township) in arranging for the disposition of sewage in the township. It appears from the testimony presented, and I find, that during this period of time efforts were made by the local township authority to have the State Department of Health rescind its permit given in 1964 so as to permit enlargement of plaintiff's plant, for the reason that it was negotiating to purchase *192 it and, among other things, did not want to have the extra burden of cost involved in any addition.
About two years later, in 1968, the Townships of Holmdel and Hazlet and the Borough of Union Beach, pursuant to N.J.S.A. 40:14A-1 et seq., created by adoption of parallel ordinances what is known as the Bayshore Regional Sewerage Authority. This authority is named as one of the defendants in this case, along with the Hazlet Township Committee, the Hazlet Township Sewerage Authority and the State Department of Environmental Protection. The adopted ordinances by their language limited the power of the authority to installing, maintaining and operating trunk lines and sewage treatment plants for the processing, collecting and treating of the effluent from sewer lines and mains installed, maintained, operated and controlled by the participating municipalities or local sewerage authority counterparts. It also appears during this time period that the Township of Hazlet Sewerage Authority purchased the facilities and plant of another existing privately owned sewerage company serving about 500 customers in Hazlet Township, known as the Raritan Valley Sewerage Company, which it still owns.
The order herein appealed from, dated February 3, 1971, among other things recites in the preambles a determination that plaintiff "discharged improperly, inadequately and insufficiently treated sewage into Flat Creek, a tributary of Raritan Bay, thereby causing or threatening injury to the inhabitants of this state either to their health, comfort or property in violation of N.J.S.A. 58:12-2. "The order further recites that the master sewage plan had been developed by the Bayshore Regional Sewerage Authority which establishes the method for providing sewage facilities for the area of Hazlet Township presently being served by plaintiff. It further makes a determination that the State Department of Environmental Protection is of the opinion that in order for the sewage to be properly, adequately and sufficiently treated, treatment and disposal facilities must be provided in the manner approved by the Department. The order of *193 April 6, 1966 is specifically rescinded and plaintiff ordered to cease the discharge of sewage and other polluting matter except in a manner approved by the State Department in accordance with the master sewage plan of the Bayshore Regional Sewerage Authority when such facilities become available. Plaintiff herein is further ordered to submit to the Department, on or before March 15, 1971, its program for ceasing such pollution.
The order of April 6, 1966 referred to was an order of the Department to plaintiff requiring that on or before August 15, 1966 plaintiff improve the sewage treatment works. As before related, that order was followed by the order of April 19, 1967 revoking the building permit which had been issued on August 27, 1964. Plaintiff replied to the order of February 3, 1971 by letter written through its attorney on March 12, 1971, indicating that it would improve its plant and, as an alternate, suggested that sewage be treated by the Bayshore Regional Sewerage Authority, but that this would be subject to negotiation of an equitable and fair rate and upon just compensation being paid to plaintiff for the facilities of the company. This proposal was not accepted.
I further find and determine that during the period of time while all this was transpiring, negotiations were going on with the Hazlet Sewerage Authority working toward a purchase by the Hazlet Sewerage Authority of plaintiff's facilities. In fact, these negotiations got to a point where contracts were drawn for a price of $1,590,000 and submitted to a meeting of the Authority for approval, but was defeated by a vote of 3-2 at the meeting, so the purchase was never consummated. Leading up to this final action of nonconsummation were many conferences and negotiations and meetings with lawyers and bonding attorneys. During this interval plaintiff did take on additional customers at the request, in some instances, of municipal officials, including such facilities as the municipal building and one or more schools and a development. As to such additional customers, consent was given in most instances by the State Department *194 of Health or Department of Environmental Protection permitting plaintiff to service such customers, notwithstanding that it was conceded by all that the facilities were not adequate to do so.
Plaintiff now seeks by this appeal alternate relief, either by a reversal of the order of February 3, 1971 or a modification thereof to allow the plaintiff to improve its plant, or for defendants or one or more of them to provide just compensation for the plant  in other words, inverse condemnation. It was agreed at the outset of the trial that the only determination to be made by the court in this respect is a determination of whether the order should be reversed, modified or, if left to stand, whether plaintiff is entitled to compensation by way of damages. The issue of damages, if allowed, was to be tried separately hereafter.
In support of its contention, plaintiff alleges that the order of February 3, 1971 was procured through the illegal acts of all the defendants in that they conspired to have such an order issued in order to force plaintiff to a commitment to the proposed regional treatment plant. Further, that the order is null and void as to plaintiff because unreasonable, arbitrary and capricious as it forces plaintiff to abandon its treatment plant without just compensation and is in violation of the constitutional requirements in that respect. Moreover, that it would be unreasonable to require plaintiff to abandon its treatment plant by reason of the conduct of the parties, particularly Hazlet Sewerage Authority, when the Authority and the State Department of Health were insisting and requesting that additional customers be added, resulting in the treatment plant working at over capacity while at the same time not allowing plaintiff to expand its plant due to threats of condemnation and demands of Hazlet Township Sewerage Authority. Additionally, that its plant and mains constitute a property right and where taken or required to be abandoned requires that just compensation be paid therefor.
Defendants generally, by way of defense, argue that plaintiff is not possessed of any property right which is the subject *195 of condemnation inasmuch as its entire operation and the permits issued in connection therewith, and the authority given to construct and operate were given under a permit or license which is revocable; that the revocation thereof by the state agency which issued the permits is reasonable and not arbitrary or capricious and is part of an overall plan statewide for the affected disposition and treatment of sewage by a regional program; that there is no property right obtained which is compensable by way of inverse condemnation; that there is no provision in the law authorizing the plan or compensation; that the action of the state agency is a reasonable and proper exercise of the police power of the State to protect the health and welfare of its citizens and of its property, and that the portion of tidal waterways effects the public trusts in lands owned by the State. Defendant municipal sewerage authorities, including the Hazlet Sewerage Authority and the Bayshore Regional Sewerage Authority and the State Department, did not conspire to deprive plaintiff of any of its rights or property and that there was no illegal agreement or action for such purpose. That the local authorities, Bayshore Regional and Hazlet, were acting only in accordance with state law and the requirements of the State Department, there having been established a regional system including a Monmouth County overall regional system which was established in 1966. That, in any event, plaintiff is estopped from bringing the within cause of action by its failure to comply with the conditions for additional construction in accordance with the last permit issued in 1964, and by reason of its continued violations of the regulations of the State Department concerning the treatment of effluent and its discharge.
Plaintiff had also alleged in the third count of its complaint that the Hazlet Township Sewerage Authority did not exercise good business judgment in purchasing the other existing private sewage treatment plant (Raritan Valley) and refusing to purchase plaintiff's plant and facilities. However, *196 during the trial this claim was dismissed by the court on motion and no longer needs further discussion.
The controlling issue which emerges out of all the testimony and the contentions made by the respective parties requires first of all a determination as to whether plaintiff is in any way estopped by reason of its conduct from seeking the relief herein sought, as alleged by defendants. The estoppel urged is predicated upon the fact that plaintiff failed to make the necessary repairs to enlarge its treatment plant within the two-year period prescribed by the permit obtained therefor, as heretofore related, and is further predicated on allegations and concessions that the regulations of the State Department have been violated by plaintiff. While it is conceded that no improvements by way of enlargement of the plant were made, as before related, it is the court's conclusion, finding and determination that under all the circumstances of the case this should not be considered as a bar to the present action. It is obvious from a recital of the facts as determined heretofore that there were negotiations going on, working toward the sale of the plant to the local authority. It seems clear that the local authorities, being mindful of the ramifications of the proposed county regional overall plan, did exert what influence they could to make sure that no additional costs would be imposed by any additions made by plaintiff, the then owner.
I hasten to add, however, that I find no conspiracy or wrongdoing in this regard for which there would be any individual or collective liability so as to substantiate a claim for tortious conduct on the part of any of the defendants which would give rise to any cause of action in favor of plaintiff for such action. This is so because they were involved with public funds; they were negotiating to obtain as good a price as they could at this time, which in fact it was their obligation and duty to do. Likewise, plaintiff was fully aware of the total situation, and under all the circumstances it would have been perhaps foolish on its part to expend the additional sums of money required. It is likewise *197 true that notwithstanding there were violations with respect to the type of effluent being discharged, due at least in part to inadequate treatment caused by defective equipment and an overloading of the plant, nevertheless this situation was well known not only to the local authorities, who, as previously recited, in some instances encouraged further use of the plant even for municipal facilities, but also the State Department, which either expressly approved or at least acquiesced to such action during this interval. Thus, in fairness and in the interest of justice, defendants should not now be able to assert the defense of estoppel and the burden of proof to so establish same has not been met by the defendants.
Proceeding, now, to the basic issues involved, and after consideration of all the testimony and the applicable law, the court comes to a final determination that the order issued on April 19, 1967, revoking the building permit previously issued on August 27, 1964, was a valid and reasonable order and constituted a valid exercise of the police power by the Department on behalf of the State. I further find that it was not arbitrary, discriminatory or capricious in any respect when considered in light of all the facts and circumstances.
As heretofore related and determined, the original permits and ensuing permits obtained from the State were subject to certain conditions which had been accepted and never removed, including the right of revocation, and thus plaintiff itself agreed to such revocation by the acceptance of such permits. The same were revocable or subject to modification or change when, in the judgment of the State Department of Health, such became necessary and required plaintiff company to comply with the rules and regulations promulgated by the Department and authorized by any policies of the Department or by any legislative acts of the State. The effect thereof is that plaintiff accepted voluntarily a determinable franchise to be determined by the judgment of the State Department of Health, now the Department of Environmental Protection. The legislative authority is, of course, contained *198 in N.J.S.A. 58:12-3, and indeed the applications of plaintiff are made pursuant to the provisions of that statute.
This being so, the real inquiry then becomes whether the order in question so authorized and made is a reasonable one, and the burden of proof to show that it is not is on plaintiff. In this connection, it must be observed that there is no dispute that the plant was for a number of years exceeding its authorized capacity, and that permission to expand the plant required the work to be done or contract awarded within a period of two years. It is conceded this was not done, so the order in revoking the permit did so in exact accordance with the terms thereof. Such time limitations have been sustained as being reasonable. See Sun Oil Co. v. Bradley Beach, 136 N.J.L. 307 at 309 (Sup. Ct. 1947), aff'd 137 N.J.L. 658 (E. & A. 1948); also Ramsey Associates, Inc. v. Board of Adjustment, 119 N.J. Super. 131, 132 (App. Div. 1972).
I find that the sewer treatment was inadequate; that the tidal waters over which the State has jurisdiction were receiving a flow of sewage which was improperly treated and which contributed to a serious pollution problem in the tributary and tidal waters under the jurisdiction of the State. In addition, the Legislature of the State, by the State Public Sanitary Assistance Act of 1965, contemplated a regional plan of disposal, and this act was further supplemented by the Monmouth County officials by a contemplated facility to be constructed by the Monmouth County Outfall Authority.
It is suggested by the State that the order is also reasonable under the theory of the common trust property, or so-called public trust theory, as enunciated in the recent case of Neptune City v. Avon-by-the-Sea, 61 N.J. 296 (1972), inasmuch as the effluent was being discharged into what might be termed "public waters" as distinguished from "private waters." There can be no question that at the time of the issuance of the order in dispute the public policy of *199 the State was to dispose of sewage by regional methods, and it is not for this court to say that such determination was erroneous, arbitrary, unreasonable or capricious. It also clearly appears from the testimony presented by one of the state experts, Delgado, that even if the improvements contemplated had been made, the plant as so improved would not be such a plant as would be permitted to be included in the regional scheme. The plant was described as being what is known as a trickling filter design and would not be able to meet the requirements now presently in existence, and there would still be the problem of pollution in the tidal waters of Flat Creek. I can see nothing unreasonable in the order itself, nor is there any indication whatsoever in the testimony presented that the order was arbitrary, capricious or discriminatory.
In the law, "arbitrary" and "capricious" means having no rational basis. Bicknell v. United States, 422 F.2d 1055, 1057 (5 Cir.1970). The terms "arbitrary" and "capricious" embrace a concept which emerges from the due process clauses of the 5th and 14th Amendments of the United States Constitution and operate to guarantee that acts of government will be grounded on established legal principles. See Canty v. Bd. of Education, City of New York, 312 F. Supp. 254, 256 (D.C.S.D.N.Y. 1970). Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances. Where there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached. State v. Johns, 66 Wash.2d 199, 401 P.2d 841, 842 (Wash. Sup. Ct. 1965); Tacoma v. Welcker, 65 Wash.2d 677, 399 P.2d 330, 335 (Wash. Sup. Ct. 1965); In re West Laramie, 457 P.2d 498, 502 (Wyo. Sup. Ct. 1969); State v. Bruno, 61 Wash.2d 461, 378 P.2d 691, 696 (Wash. Sup. Ct. 1963); Miller v. Tacoma, 61 Wash.2d 374, 378 P.2d 464, 474 (Wash. Sup. Ct. 1963); Petition of City of Bellevue, 62 *200 Wash.2d 458, 383 P.2d 286, 288 (Wash. Sup. Ct. 1963); Urmston v. North College Hill, 114 Ohio App. 213, 175 N.E.2d 203, 206 (Ct. of Appeals, Hamilton Co. 1961); Wagoner v. Arlington, 345 S.W.2d, 759, 763-764 (Tex. Civ. App. 1961); DuPont-Fort Lewis School Dist. #7 v. Bruno, 79 Wash.2d 736, 489 P.2d, 171, 174 (Wash. Sup. Ct. 1971). Moreover, the court should not substitute its judgment for that of an administrative or legislative body if there is substantial evidence to support the ruling. Kansas City Southern Ry. Co. v. Louisiana Public Service Comm'n., 254 La. 160, 223 So.2d 132, 136 (La. Sup. Ct. 1969). Surely, applying these accepted definitions and tests indicates the reasonableness of the Department's action with respect to the existence of a public interest in the waterways for the common purpose of fishing and other uses.
With reference to the so-called public trust doctrine argued by the State of New Jersey herein, as previously referred to, the Court makes no determination as to the scope and effect of this doctrine or its applicability here. It is unnecessary to do so in view of my previous determinations as to the reasonableness of the order on the grounds and for the reasons heretofore mentioned. It is, however, pertinent to observe that in this advanced age of increasing interest in ecology and the public's interest in lands and waters under the jurisdiction of the State, that it is a factor which should be taken into consideration, but the extent and scope to which it should be taken into consideration is, I believe, something best left to appellate courts for decision because of the possible ramifications involved.
The remaining question for determination concerns plaintiff's contention that if the order is upheld by this court, then this court should make a determination that plaintiff is entitled to just compensation since the effect of the order is to constitute a taking of property protected by either the Constitution of the State of New Jersey or the Constitution of the United States. In undertaking such determination, inasmuch as the State of New Jersey is now also *201 a party to the suit, and thus all parties in interest are before the court, including the State, and the parties having consented herein to such determination, the court will consider this problem as though it were in the nature of a declaratory judgment even though it might be argued that it is premature. Bd. of Education, Morristown v. Palmer, 46 N.J. 522 (1966).
Factually, the effect of the order upon the facilities of the regional plan being put into effect is to prevent plaintiff from further expanding its treatment plant or using it, inasmuch as the testimony indicates that what in fact is contemplated and will be done is that plaintiff's treatment plant will be by-passed. Collective mains owned by plaintiff or owned in conjunction with local sewer authorities and which are available in the area will be used to transport and conduct the sewage involved in the area to facilities of the regional authority or authorities and will be treated by such facilities regionally. To this extent at least, plaintiff's business will continue. Does this constitute a taking of property for which plaintiff is entitled to be compensated? My determination is that it does not. Parenthetically, it should be noted that the testimony of the State's expert indicates that throughout the State there are approximately 700 to 800 of such privately owned treatment plants, which will be involved in the same fashion when regionalization eventually takes place pursuant to the overall plans. Some of these plants are such that they will be incorporated into the regional system because they are so constructed and contain adequate facilities or are otherwise capable and satisfactory of conforming or being made to conform. In those instances where the plants are adequate and will be taken over, testimony indicates that it is proposed (and the State Department has no objection) that they be acquired by local authorities for such purpose. As already indicated, plaintiff's plant does not meet the requirements now or in the contemplated alteration thereof, and thus it would not be taken over or acquired with the approval of the State Department.
*202 N.J. Const. (1947), Art. I, par. 20 provides "private property shall not be taken for public use without just compensation." The 5th Amendment of the United States Constitution provides, among other things, "nor shall private property be taken for public use, without just compensation." The 14th Amendment of the United States Constitution provides that "[no order shall] deprive any person of life, liberty, or property, without due process of law." The Eminent Domain Act of the State of New Jersey now in effect became effective December 21, 1971 and by its terms seemingly provides for jurisdiction in cases of inverse condemnation. Under section 5 thereof it authorizes the court to compel the exercise of the power of eminent domain where applicable. N.J.S.A. 20:3-1 et seq.. It is conceded by plaintiff that the power of condemnation of defendant agency, Department of Environmental Protection, is limited by statute, although it is asserted that defendant State of New Jersey, the principal of its agent, Department of Environmental Protection, has complete powers of condemnation given by the Constitution of the State of New Jersey.
What is a taking is often a difficult factual question to determine. It is urged that there are New Jersey cases which permit compensation for nonphysical takings, and plaintiff cites in its brief as one of these cases Bd. of Education, Morristown v. Palmer, 88 N.J. Super. 378 (App. Div. 1965). However, it is to be observed that although the Appellate Division in that case was of the opinion and held that the school board would be entitled to compensation without regard to whether there was an actual physical invasion of the school property arising out of a proposed construction of a highway immediately adjacent to the school property, this holding was reversed by our New Jersey Supreme Court, 46 N.J. 522, 525-526 (1966), wherein the court specifically states that it expressed no opinion on whether compensation should be paid, holding the action was then premature. The other two cases cited, Passaic v. Paterson Bill Posting Co., 72 N.J.L. 285 (E. & A. 1905) and Pennsylvania R.R. Co. v. *203 Angel, 41 N.J. Eq. 316 (E. & A. 1886), are not authority for plaintiff's position the facts and holdings therein are distinguishable from the instant case. For example, in Passaic v. Paterson Bill Posting Co. there was first a determination that the billboard ordinance there involved had exceeded the police power and so an unlawful confiscation. Not so here.
In the instant case there is no intimation or suggestion that plaintiff's treatment plant is to be taken at all. What is involved is an eventually contemplated abandonment of the plant. It must be remembered that the treatment of sewage is seriously involved with the public interest. As population increases, the interest of the public becomes more affected hour by hour, day by day, and year by year. Methods of treatment and disposal of necessity change, and even at this time no one can really say what methods will be employed in the future. Thus, it is not only logical but mandatory that the use of waters belonging to the people of the State of New Jersey used for disposal of sewage must be such that it can be at all times controlled and, where necessary in the public interest and on a reasonable basis, be capable of being revoked. Thus, we come to the vital question of whether or not in the exercise of the police power and owing to the need for a more modern method of treatment, the requirement that plaintiff's plant be abandoned, as contrasted to its actually being taken, requires compensation to be paid, particularly when the terms of the permit allowing the use of the plant specifically provide for a revocation thereof when in the judgment of the authorities charged therewith it shall become necessary.
The United States Supreme Court has held, and it is settled law, that a proper exercise of the police power is without the limitations and restrictions of the constitutional provisions applying to the exercise of eminent domain. Chicago, etc., R. Co. v. Illinois, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596 (1905). The landmark case appears to be Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 *204 (1887), in which Justice Harlan, speaking for the court, said:
The power which the states have of prohibiting such use by individuals of trier property as will be prejudicial to the health, the morals, or the safety of the public, is not * * * and * * * cannot be  burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain, by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community. [at 669, 8 S.Ct. at 301]
Likewise, New Jersey courts have held that no right to compensation adheres to a valid exercise of the police power by the state. In Penna.-Reading Seashore Lines v. Bd. Pub. Utility Comm'n., 13 N.J. Super. 540 (App. Div. 1951), aff'd. 8 N.J. 85 (1951), it was held that:
And as all property, whether owned by private persons or by corporations, is held subject to the authority of the State to regulate its use in such manner as not to unnecessarily endanger the lives and personal safety of the people, it is not a condition of the exercise of that authority that the State shall indemnify the owners of property for the damage or injury resulting from its exercise. Property thus damaged or injured is not, within the meaning of the Constitution, taken for public use * * * [Emphasis supplied]
In State v. Mundet Cork Corp., 8 N.J. 359 (1952), cert. den. 344 U.S. 819, 73 S.Ct. 14, 97 L.Ed. 637 (1952), our New Jersey Supreme Court, quoting from Welsh v. Morristown, 98 N.J.L. 630, 634 (Sup. Ct. 1923), aff'd per curiam on opinion below, 99 N.J.L. 528 (E. & A. 1924), held that:
Every citizen holds his property subject to the proper exercise of this power * * * by the Legislature directly * * * It is well settled that laws and regulations * * * relating to the comfort, health, convenience, good order and general welfare of the inhabitants, though they may disturb the enjoyment of individual rights, are not unconstitutional, though no provision is made for compensation for such disturbances. They do not appropriate private property for public use, but simply regulate its use and enjoyment by the owner.
A determination of where regulation ends and taking begins is not capable of any set formula or definition. Goldblatt v. *205 Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). Each case must turn on its own set of facts. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). The right of the State to use the police power to protect and advance the public health of its citizens is without dispute, because the preservation of the public health is of necessity a vital element of the police power. Board of Health v. New York Cent. R.R. Co., 4 N.J. 293 (1950). It has also been held in this State that sanitary regulations controlling dumping are valid exercises of police power requiring no compensation. Earruso v. Bd. of Health, East Hanover Tp., 120 N.J.L. 463 (1938). To like effect, see Gardner v. Michigan, 199 U.S. 325, 26 S.Ct. 106, 50 L.Ed. 212 (1905). Regulations concerning pollution also fall within the traditional concept of a proper exercise of the police power. Huron Cement Co. v. Detroit, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960). More specifically, the power of the State to regulate the discharge of effluents from sewage plants by means of orders issued under N.J.S.A. 58:12-1, 2, 3 has been recognized. See State Health Dept. v. Passaic Valley Sewerage Com., 100 N.J. Super. 540 (Ch. Div. 1968), aff'd 105 N.J. Super. 565 (App. Div. 1969).
In the instant case, factually, as before stated, the court is dealing not with the expropriation or the taking of private property but in fact with the revocation of a permit or franchise. Reference is made to Acton v. United States, 401 F.2d 896 (9 Cir.1968), cert. den. 393 U.S. 1121, 89 S.Ct. 1003, 22 L.Ed.2d 128 (1968). This case involved valuable uranium exploration permits as to which the appellants had expended substantial time and funds, and it was held that these permits could be revoked without compensation under a provision contained in the permit providing for revocation when "required by military necessity." As in the instant case, the permit was apparently silent as to the right of compensation. In declaring that such a license does not constitute property for which the government will be liable *206 upon condemnation and pass to the licensee, no estate or interest in the lands, the court used the following language:
It is fundamental that when the United States takes private property for public use the Fifth Amendment requires payment of just compensation. This obligation, however, recognizes only vested property rights, and not the tenuous rights of licenses and permits, even though these at times may have value. [at 899]
In furtherance of its holding the court also made reference to its previous opinion in Osborne v. United States, 145 F.2d 892 (9 Cir.1944), and quoted language therefrom as follows:
Numerous instances are to be found where permits issued by a sovereign are highly valuable as between private persons but which may be revoked by the sovereign without the payment of compensation: e.g., bridge franchises * * *; licenses to erect river and harbor structures * * *; permits to erect and maintain telephone and power lines * * *; licenses to occupy, lease, or sell fishing areas. [at 896; citations omitted]
See also Mt. Vernon, Alexandria and Washington Ry. Co. v. United States, 75 Ct. Cl. 704 (1932), cert. den. 287 U.S. 643, 53 S.Ct. 87, 77 L.Ed. 556 (1932).
It follows from what has been here decided that plaintiff's rights were at all times subject to being revoked by the State by reason of the condition imposed in the permit applied for and accepted by it and in the subsequent permits which were issued from time to time. There is no expropriation or actual taking of plaintiff's treatment plant  that is, no physical taking. The interest or rights of plaintiff as owner of the treatment plant, so far as the State is concerned and so far as the other defendants in this case are concerned, is not such interest as requires payment of compensation by reason of having issued the order in question.
It follows also that there is no obligation on the part of the local authorities, defendants herein, to pay any compensation, for any act complained of by plaintiff with respect to its claim for compensation against these defendants was *207 but an act of a public body carrying out the legislative scheme and the regulations of the State Department. No authority has been submitted that any local authority would have to pay compensation by way of condemnation, even if it was authorized to condemn (which is here denied) by reason of the action taken by the State Department of Environmental Protection or the State Board of Health. There does not appear to be any legislative authority for this in any event, nor do the local authorities that were formed appear to have any authority to condemn. Whether they have such authority is not necessary to be determined in view of the conclusions heretofore set forth.
Counsel may present an order in accordance with the findings and conclusions herein reached and in accordance with the determinations of the court made on motion for dismissal as to portions of the case which were granted during the trial. No costs will be allowed as to any of the parties.