230 N.J. Super. 567 (1988)
553 A.2d 1384
CONSTANCE M. KLIPSTEIN, PLAINTIFF,
v.
JOHN ZALEWSKI, DEFENDANT.
Superior Court of New Jersey, Chancery Division Somerset County, Family Part.
Decided December 5, 1988.
*569 John E. Schwartz for plaintiff.
Joan G. Geiger for defendant (Stanley & Powers, attorneys).
IMBRIANI, J.S.C.
What are the visitation rights of a stepparent after a divorce? This thorny problem frequently arises, as it does here, when a man (hereinafter stepfather) marries a divorced woman who had a child by a prior marriage and they thereafter are divorced.[1] Recent cases in New Jersey have addressed the issue of when an obligation to support a stepchild may be imposed upon a stepfather after he divorces the child's natural mother, but no case has addressed the issue of visitation rights. We hold that this stepfather is not entitled to any visitation rights, albeit under certain circumstances a stepparent may be entitled to visitation rights with a stepchild.
Visitation rights can arise either by statute or general principles of equity. Statutes grant visitation rights to parents, N.J.S.A. 9:2-4, and to grandparents and siblings, N.J.S.A. 9:2-7.1, but New Jersey has no statute granting visitation rights to a stepparent after a divorce. Consequently, visitation rights of stepparents can arise only under general principles of equity.
*570 On June 25, 1985, the stepfather married a divorcee who had a four-year-old daughter by a prior marriage, separated from her and the child in June 1986, and was divorced on December 15, 1986. Thus, the stepfather actually lived with the child for about one year.
There are now three father figures in the life of this seven-year-old child. First, the biological father who receives visitation once a month in his home state of Connecticut. Second, this stepfather. And third, the present live-in boyfriend and presumably soon to be the third husband of the natural mother. Both biological parents vehemently oppose visitation by the stepfather. Not surprisingly, the mother contends that the true motive of the stepfather is not to maintain a relationship with the child but with her through the child. The live-in boyfriend has not entered this case.
Despite the fact that the property settlement agreement provided that the mother would not seek child support, it did provide that:
[i]t is understood and agreed that the loving relationship which exists between the minor child Christine and the husband shall be continued. Specifically, the husband shall have reasonable and liberal visitation rights with the minor child Christine, not withstanding [sic] the fact that the minor child Christine is not the result of the marriage between husband and wife.
The stepfather received regular visitation after the separation but when the mother developed a close relationship with her present boyfriend, visitation ceased and this motion to enforce litigant's rights ensued. The stepfather contends that he previously was able "to maintain my relationship with my stepdaughter without too many problems."
Court ordered visitation mediation was unsuccessful but the mediator did express concern that visitation with the stepfather "may cause the child some emotional confusion" not only because coordination of the child's activities with the three father figures might "be just too much for the child to handle," but also because the child "has been able to successfully terminate the relationship with her stepfather." The child told the mediator: *571 "I don't want to be his daughter, because I have my own dad," but the mediator suspected that this "may be based in part on the desires of her mother."
While we are, of course, concerned with the visitation rights of stepfathers, it must nonetheless be appreciated that the ultimate goal of the court is to do what is in the best interest of the child. We are dealing with competing rights. On one hand, those of a stepfather to continue and maintain a loving relationship which he asserts he has developed with the child and, on the other hand, those of the child to a non-fragmented parental structure and a life not unduly burdened with visitation obligations. There must be some limits on stepparent visitation rights because in our society it is not difficult to conceive of a child having three, four or even more stepfathers and there are not enough days in a week for the child to have visitation with all of them. Frequently, there will be no satisfactory solution which will please everyone. Justice to both the stepfather and the child, which is the desired objective, can rarely be attained in a case such as this because the interests of one can be satisfied in many cases only at the expense of the other. And if these competing interests cannot be reconciled, it is the rights of the stepfather which must fall.
A stepparent relationship alone does not confer rights or obligations with respect to a stepchild. There must be more. But how much more is the question. Many courts have held that when a stepparent assumes an in loco parentis relationship with a child there are circumstances under principles of equitable estoppel when a court will impose upon the stepparent the same support obligations as a natural parent. See Gribble v. Gribble, 583 P.2d 64 (Utah 1978); Looper v. McManus, 581 P.2d 487 (Okl.App. 1978); Simpson v. Simpson, 586 S.W.2d 33 (Ky. 1979); Collins v. Gilbreath, 403 N.E.2d 921 (Ind. App. 1980); Carter v. Brodrick, 644 P.2d 850 (Alaska 1982); Evans v. Evans, 302 Md. 334, 488 A.2d 157 (1985); Michelle W. v. Ronald W., 39 Cal.3d 354, 216 Cal. Rptr. 748, 703 P.2d 88 (1985); Atkinson v. Atkinson, 160 Mich. App. 601, 408 N.W.2d *572 516 (1987). And others have imposed a duty to support on the basis of a perceived psychological or emotional bond between the stepparent and child. Gorman v. Gorman, 400 So.2d 75 (Fla.App. 1981); In re Donna W., 325 Pa.Super. 39, 472 A.2d 635 (1984). The foundation of equitable estoppel is "justice and good conscience" and is "based upon reliance by one upon the conduct of another, without regard to the actual intention of the other." Mattia v. Northern Ins. Co. of New York, 35 N.J. Super. 503, 510-511 (App.Div. 1955).
The issue sub judice is not whether to impose an obligation to support upon a stepparent after a divorce, but whether to grant a stepparent visitation rights. Despite the frequency with which this problem must arise, surprisingly, there is a paucity of information available. Nonetheless, it can fairly be argued that the obligation to support and the right to visitation are correlative and the two legal tenets should be applied in pari materia.
While the stepparent relationship alone does not create an obligation to support, to the contrary it will not be denied merely because of the absence of a blood relationship with the child. Courts have recognized that when a stepparent and a child live together in a family environment the child could become financially dependent upon the stepparent and to arbitrarily terminate that source of funds could be detrimental to the best interest of the child. Not infrequently a stepparent may be the only parent the child has known and he or she becomes as devoted and concerned about the welfare of a stepchild as a natural parent.
There are at least two theories upon which a support obligation has been imposed upon a stepparent on the basis of equitable estoppel. One is when the stepparent stood in an in loco parentis relationship to the child and the other is when there exists a perceived psychological or emotional bond with the child. It would appear that New Jersey recognizes the former in certain limited circumstances, but not the latter.
*573 In New Jersey a stepfather has no obligation to support a stepchild simply because a perceived psychological or emotional bond exists between the two. Miller v. Miller, 97 N.J. 154 (1984) expressly said:
No court has ever applied equitable estoppel to force a husband to support the children of his divorced spouse merely because he developed a close relationship with the children, nurtured them into a family unit with himself as the father, and had the children call him "daddy." We decline to be the first to set such a precedent.
We specifically determine that the development of "emotional bonding" as set forth by the trial court is not sufficient to invoke the doctrine of equitable estoppel in stepparent cases. To hold otherwise would create enormous policy difficulties. A stepparent who tried to create a warm family atmosphere with his or her stepchildren would be penalized by being forced to pay support for them in the event of a divorce. [at 168]
But the very next year there were indications that "bonding" may give rise to stepparent obligations. In M.H.B. v. H.T.B., 100 N.J. 567 (1985), an equally divided Supreme Court affirmed a divided decision of the Appellate Division which imposed upon a man an obligation to pay support for a child born during his marriage to the biological mother, but fathered by another. The stepfather lived with the child and mother on and off for three years and three Justices accepted the trial court's finding that since he became the "psychological, if not biological parent," Id. at 572-573, of the child he was equitably estopped from denying a continuing obligation to support the child. However, three Justices disagreed and argued that instead of imposing support on the basis "of a perceived emotional bonding between the stepparent and child" we should adhere to Miller which limits the obligation to support to those cases in which the stepparent "actively interferes with the children's support from their natural parent". Id. at 580.
Obviously, this issue is now in a stage of flux and will be reviewed again. But as of this moment, despite earlier cases supporting the theory of psychological and emotional bonding in parent termination cases, see In re P, and wife, 114 N.J. Super. 584 (App.Div. 1971) and In re Guardianship of D.N., 190 N.J. Super. 648 (J. & D.R.Ct. 1983), a stepparent's obligation to *574 support does not arise on the basis of a perceived psychological or emotional bonding.
On the other hand, a duty to support the children of a former spouse will be imposed upon a stepparent on the basis of equitable estoppel when the stepparent stood in an in loco parentis relationship to the stepchildren and he or she "actively interferes with the children's support from their natural parent". Miller v. Miller, supra, 97 N.J. at 169. An in loco parentis relationship, which generally terminates upon dissolution of the marriage, arises:
when a stepparent receives a child into the family home under circumstances giving rise to a presumption that he or she will assume responsibility to maintain, rear, and educate the child. [Id. at 162]
However, Miller emphasized that the primary obligation to support a child rests with the natural parent and that a support obligation based on equitable estoppel "should be applied with caution." Id. at 167.
Thus, the law in New Jersey appears to be that the obligation to support stepchildren is limited to those cases in which (1) there existed an in loco parentis relationship between the two and (2) the stepparent "actively interfer[ed] with the children's support from their natural parent." Id. at 169. Absent these findings in New Jersey there is no obligation by a stepparent to support stepchildren.[2]
The issue here is, assuming there are facts justifying the imposition of an obligation to support a stepchild after divorce based on a theory of equitable estoppel, whether such facts would similarly equitably estop the natural parents from denying the stepparent visitation rights with their child? In other words, does the obligation to support create a corresponding right of visitation? We think the question must be answered in *575 the affirmative. To hold otherwise would be unfair and create enormous difficulties for the parties because few stepparents would dutifully pay support for children who they could not see and visit and would eventually become virtual strangers. Such a result would be fraught with difficulties, breed enormous hostility and cause constant litigation.
Obviously, the burden of proving the right to visitation rests with the stepfather since it is he who makes the claim. Id. at 163. After carefully examining the affidavits submitted, we are satisfied that he has failed to do so. Miller v. Miller, supra, explained that there
[t]hree prerequisites to equitable estoppel  representation, reliance and detriment. [at 167]
In this case, while there is some basis upon which it could be asserted that there were representations by the stepfather of his desire to maintain and further a loving relationship with the child, there is no evidence that the child ever relied upon the stepfather for financial assistance or for love and comfort. Moreover, the record is barren of any evidence that any detriment will be suffered by him or the child if visitation is denied. Thus, at best, he has satisfied only one of the three prerequisites, i.e., representation. He has not shown why a residential relationship with the child for a period of only one year, during which the child maintained a good relationship with her natural father, is of such great importance to this child that we should compel visitation over the objections of not only both natural parents but, equally important, of the child herself. Other than conclusory statements, the affidavits fail to disclose any evidence of the relationship of the two when they resided together. At best, it has only been shown that the stepfather contributed to the child's support during the time they resided together.
While it is true that the mother agreed to visitation in the property settlement agreement, it is axiomatic that a mother cannot bargain away the best interest of the child; nor can a stepfather's contractual rights be superior to the best interests *576 of a child. Such agreements are at best only a factor to be considered in determining the visitation rights of a stepparent. A court under its parens patriae authority always has the duty and power to disregard agreements made by parents relating to children. No agreement can ever be dispositive of this very difficult and troublesome issue.
Ordinarily, a dispute of this nature should not be decided solely on the basis of affidavits, but only after a plenary hearing to resolve all factual disputes. Hallberg v. Hallberg, 113 N.J. Super. 205, 208 (App.Div. 1971). However, practically every dispute in the matrimonial motion practice involves a factual dispute of some nature and to avoid holding plenary hearings to resolve practically all motions we require that the movant first carry the threshhold burden of establishing a prima facie case. As stated in Shaw v. Shaw, 138 N.J. Super. 436 (App.Div. 1976):
where, as here, the affidavits do not show the existence of a genuine issue of material fact, the trial judge need not take oral testimony, and may decide the motion with a plenary hearing (case cited). An inflexible rule requiring a plenary hearing on every [motion] ... would impede the sound administration of justice, impose an intolerable burden upon our trial judges, and place an undue financial burden upon the litigants. [at 440]
A review of the affidavits discloses no evidence that the stepfather ever developed a close and loving relationship with the child or assumed an obligation to support the child. At best, we have nothing more than his conclusory statements which must be disregarded. See Lepis v. Lepis, 83 N.J. 139, 159 (1980). In spite of the love that this stepfather asserts that he has for this child, we note that, not only does the property settlement agreement expressly state that "the wife is not making any claim for any child support payments whatsoever," but, significantly, the stepfather has never offered to pay any support for the child. Under these circumstances, we are satisfied that a determination can be made solely on the basis of the affidavits and the investigation made by the family case management office that this stepfather is not entitled to visitation.
NOTES
[1] For purposes of this opinion a stepparent is a person who is not a natural or adoptive parent of a child and who is or was married to one of the natural or adoptive parents of the child. It does not address the visitation rights of a person who lives without benefit of marriage with the natural or adoptive parent of a child.
[2] We would observe that if this were a case wherein the stepparent voluntarily agreed to pay support and there was a question concerning the ability or desire of the absent parent to support the child, the outcome might well be different.