258 N.J. Super. 333 (1992)
609 A.2d 523
ANNA COSME, PLAINTIFF,
v.
DANIEL FIGUEROA, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Hudson County.
Decided May 20, 1992.
*335 For Plaintiff: Anna Cosme Pro Se.
For Defendant: Daniel Figueroa Pro Se.
HEALY, J.S.C.
On May 11, 1992, the plaintiff filed a domestic violence complaint alleging that defendant assaulted her when defendant went to pick up the parties' child from a scheduled visitation. Pursuant to her ex parte testimony in court, the court issued a temporary restraining order prohibiting any contact between the plaintiff and the defendant as well as suspending the defendant's visitation until the date of the final hearing, May 20, 1992. There would have been one overnight visitation of 46 hours during this time period.
*336 There is a history of litigation between the parties. On April 20, 1992, the defendant herein, Daniel Figueroa filed a complaint seeking visitation with the parties' child Daniel Figueroa, born January 1, 1990. On April 28, 1992, the plaintiff herein, Anna Cosme responded by filing a domestic violence complaint alleging terroristic threats, assault and harassment by the defendant. Pursuant to plaintiff's prior complaint a temporary restraining order was issued on April 28, 1992. However, on the return date the plaintiff, after executing the appropriate affidavit, and appearing before the court, withdrew the complaint and dismissed the case. On April 29, 1992, a visitation consent order was entered whereby plaintiff and defendant agreed that defendant would have overnight visitation on weekends from Friday 8:00 p.m. through Sunday 6:00 p.m. It was the contact between the parties on Sunday at 6:00 p.m. which gave rise to the instant complaint.
At the final hearing of the instant case both parties appeared. The plaintiff testified that while she was picking up the child on May 10, 1992, the plaintiff and the defendant became involved in an altercation. The plaintiff further testified that when the defendant struck her, the parties' one year old son was in her arms. Defendant admits that he in fact assaulted the plaintiff by pushing her, but claims that the baby was not in her arms at the time.
Plaintiff further testified that she and the defendant had lived together prior to the institution of litigation. She also stated that during cohabitation the defendant was employed and she was receiving welfare and that the welfare money was used to furnish her apartment. Defendant denies that the welfare grant was used in this manner, but instead testified that he purchased various household items, and sought possession of those items at the proceeding.
Based on the undisputed testimony of the plaintiff, this court finds that the defendant did assault the plaintiff on April 29, 1992 and issued a final restraining order. The final order *337 contained the standard restraints as well as supervised visitation and a support order adopted from the prior consent order of the court. In addition, a risk assessment and domestic violence counseling for anger management of the defendant were also ordered. The matter was referred to County Counsel's Office and the Hudson County Prosecutor for possible welfare fraud. The court specifically refused to take a position as to possession of any items of personal property and gave the parties the opportunity to collect their proofs as to entitlement to the requested items.
The major issues to be determined in this domestic violence case are (1) which party bears the burden of proof on a request for a risk assessment, (2) upon what quantum of proof is the request found to be or not be arbitrary or capricious, and (3) may visitation be terminated pending the results of an ordered risk assessment.
Initially, the court must determine the propriety of ordering a risk assessment. The pertinent section of the Prevention of Domestic Violence Act of 1990 provides:
The court shall consider a request by the plaintiff for an investigation or evaluation by the appropriate agency to assess the risk of harm to the child prior to the entry of a visitation order. Any denial of such a request must be on the record and shall only be made if the judge finds the request to be arbitrary or capricious. L. 1991 c. 261 s. 13.b.(3)(a).
Clearly, the plain language of the statute mandates that the court must consider ordering a risk assessment on any request by the plaintiff. But, upon what showing does the court grant or deny the request? More particularly, which party is responsible for proving or disproving that the request is arbitrary or capricious, and what quantum of evidence will satisfy the court for such a finding?
The allocation of the burden of proof is rarely provided in the text of a statute, and as it is a procedural matter it is commonly left to the courts to decide. Matter of Will of Smith, 108 N.J. 257, 528 A.2d 918 (1987). Generally, "[t]he party asserting a claim has the burden to prove it." WCI-Westinghouse, *338 Inc. v. Edison Tp., 7 N.J. Tax 610, 630 (Tax Ct. 1985), aff'd 9 N.J. Tax 86 (App.Div. 1986). "[T]he burden of establishing the existence of a fact or circumstance [necessary to support the claim] is on the party relying thereon." Snyder v. I. Jay Realty Co., 53 N.J. Super. 336, 347, 147 A.2d 572 (App.Div. 1958), aff'd in part, rev'd in part 30 N.J. 303, 153 A.2d 1 (1959). Thus, in Family Part cases, the party seeking visitation has the burden of proving a right to visitation. Klipstein v. Zalewski, 230 N.J. Super. 567, 575, 553 A.2d 1384 (Ch.Div. 1988). Likewise, the burden for modifying a child custody decree or alimony award is upon the party requesting such a modification. Mastropole v. Mastropole, 181 N.J. Super. 130, 136, 436 A.2d 955 (App.Div. 1981); Innes v. Innes, 117 N.J. 496, 503-504, 569 A.2d 770 (1990).
Nevertheless, the courts have on occasion placed the burden of proof on the non-claiming party for policy considerations. See N.J.R.Evid. 1(4) comment 2. For example, the courts have placed the burden upon the defendant in a position of trust to prove no deception or undue influence. Seylaz v. Bennett, 5 N.J. 168, 173, 74 A.2d 309 (1950); Bronson v. Bronson, 218 N.J. Super. 389, 392-395, 527 A.2d 943 (App.Div. 1987); Petruccio v. Petruccio, 205 N.J. Super. 577, 580, 501 A.2d 593 (App. Div. 1985). Similarly, a party with almost exclusive control of evidence needed to prove or disprove a fact, will regularly be required to carry the burden on that issue. See Anderson v. Samberg, 67 N.J. 291, 338 A.2d 1 (1975) cert. den. 423 U.S. 929, 96 S.Ct. 279, 46 L.Ed.2d 258 (1975).
In the instant case, it is the plaintiff that is making a claim for court action, and it is the plaintiff that is relying upon the judge's finding to be awarded the risk assessment. Thus, applying the general rule, it would appear that it is the plaintiff's burden to show that the request is not arbitrary or capricious. Still, the negative presentation of the standard, that a denial shall be issued only upon a finding that the request is arbitrary or capricious, suggests it is the defendant's *339 burden to carry. Moreover, it has been the philosophy of this State's Courts that the protection of minor children is the primary concern in custody and visitation determinations. In addition, the Prevention of Domestic Violence Act of 1990 recognizes this policy in citing the "positive correlation between spousal abuse and child abuse; and that children, even when they are not themselves physically assaulted, suffer deep and lasting emotional effects from exposure to domestic violence." L. 1991 c. 261 s. 2. And finally, since the risk assessment does not unduly prejudice the interests of either party and may be an extremely helpful tool in determining visitation disputes, it is this court's conclusion and holding that a requested risk assessment should be ordered unless the defendant can show that the request is arbitrary and capricious. In this manner, the child is further removed from the controversy between his/her parents and cannot be used as a tool by either parent to extract some form of retribution against the other.
New Jersey Evidence Rule 1(4) provides two standards of proof for civil cases; preponderance of the evidence, and clear and convincing evidence. Which of the standards is to be utilized "can vary depending upon the type of proceedings, the comparative interests of the parties, the relative litigational strengths or weaknesses of the parties, the access of the parties to proof, and the objectives to be served by the evidence in the context of the particular proceedings." Romano v. Kimmelman, 96 N.J. 66, 89, 474 A.2d 1 (1984). The preponderance of the evidence standard is generally employed, and the clear and convincing standard is to be used only in appropriate specified settings. In re Evans, 227 N.J. Super. 339, 347, 547 A.2d 344 (Law Div. 1988). The clear and convincing proof standard is applied when the civil proceeding can result in the loss of an individual's liberty or the permanent deprivation of fundamental rights or interests. In re Polk License Revocation, 90 N.J. 550, 563, 449 A.2d 7 (1982). The clear and convincing standard also applies where "circumstances or issues ... are so unusual or difficult, that proof by a *340 lower standard will not serve to generate confidence in the ultimate factual determination." Id. at 568, 449 A.2d 7.
The instant case presents none of the above circumstances warranting use of the clear and convincing burden of proof. Moreover, because this determination involves not only the adult parties, but also the well-being of a minor child, the minimum standard of proof is indicated.
In the absence of the minor child the court here might have ruled this motion arbitrary and capricious. Our courts have ruled that "[i]n the law, `arbitrary' and `capricious' means having no rational basis." Bayshore Sew. Co. v. Dep't. of Env., N.J., 122 N.J. Super. 184, 199, 299 A.2d 751 (Ch.Div. 1973) aff'd. 131 N.J. Super. 37, 328 A.2d 246 (App.Div. 1974), (citing Bicknell v. United States, 422 F.2d 1055, 1057 (5 Cir.1970). "Arbitrary and capricious action ... means willful and unreasoning action, without consideration and in disregard of circumstances." Id. at 199, 299 A.2d 751. The previous domestic violence complaint was filed in response to defendant's visitation complaint and then withdrawn by the plaintiff. The parties settled the prior visitation dispute allowing the defendant liberal visitation. Such behavior suggests that the plaintiff may be abusing the court system and pursuing the present action for purposes of retribution designed to annoy and embarrass the defendant. However, the defendant has not demonstrated by the preponderance of the evidence that plaintiff's request for a risk assessment is arbitrary and capricious. Furthermore, he admitted to the assault which formed the factual basis for the finding of domestic violence. At best, he has merely denied some of plaintiff's allegations. In addition, the presence of their child in the middle of this dispute, warrants the order of a risk assessment.
The next issue that must be addressed is the status of the defendant's visitation with his son. Plaintiff, as part of her domestic violence complaint, requested that defendant's visitation be terminated pending the evaluation by risk assessment. *341 This court refuses to order such drastic action based upon the facts of this case and the following analysis.
The Prevention of Domestic Violence Act of 1990 provides in pertinent part:
The Court shall consider suspension of the visitation order and hold an emergent hearing upon an application made by the plaintiff certifying under oath that the defendant's access to the child pursuant to the visitation order has threatened the safety and well-being of the child. L. 1991 c. 261 s. 13b(3)(b).
It is established law "that a parent's rights to the care and companionship of his or her child are so fundamental as to be guaranteed protection under the First, Ninth and Fourteenth Amendments of the United States Constitution." Wilke v. Culp, 196 N.J. Super. 487, 496, 483 A.2d 420 (App.Div. 1984); certif. den. 99 N.J. 243, 491 A.2d 728 (1984); see also Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982); Franz v. United States, 707 F.2d 582, 594 (D.C. Cir.1983). "[T]he freedom of a parent and child to maintain, cultivate, and mold their ongoing relationship" is one of the most important of the fundamental rights. Franz, 707 F.2d at 595. "[S]ince custody and visitation encompass practically all of what we call `parental rights,' a total denial of both would be the equivalent of termination of parental rights." Matter of Baby M, 109 N.J. 396, 451, 537 A.2d 1227 (1988). For the noncustodial parent, visitation with the child may be the only method wherein the parental relationship can be maintained.
It must be noted, however, that there is no allegation before this court that constitutional rights have been violated. And therefore, it is not for this court to conclusively determine the prerequisites the "state" must satisfy before such a deprivation occurs. Moreover, it is yet to be determined whether a suspension of parental rights is equivalent to a "termination" of those rights sufficient to trigger constitutional protection.
Still, considering the fundamental importance these rights are accorded, and this State's policy of encouraging and implementing visitation with the noncustodial parent, it is this court's opinion that it should comply, as far as possible, with *342 the requirements for infringing upon a fundamental right. "Where certain `fundamental rights' are involved, the Court has held that regulation limiting these rights may be justified only by a `compelling state interest'", Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1972). (Cites omitted). Furthermore, such regulation must be implemented by the least restrictive method so as not to "unnecessarily invade the area of protected freedom". Griswold v. Connecticut, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965). See also Roe v. Wade, 410 U.S. at 155, 93 S.Ct. at 728, Franz, 707 F.2d at 602. Before a governmental body may deny a fundamental interest it must demonstrate that a) there is a compelling governmental interest; b) the least restrictive method of achieving the interest is used and; c) the affected parties are accorded due process of law. Franz, 707 F.2d at 602.
In nearly all visitation cases the courts have a compelling interest in protecting the welfare of the subject child(ren), and that is certainly true in the instant controversy. The courts of this State have a responsibility, pursuant to the doctrine of parens patriae, to protect all minor children from harm. In re J.R. Guardianship, 174 N.J. Super. 211, 224, 416 A.2d 62 (App.Div. 1980) certif. den. 85 N.J. 102, 425 A.2d 266 (1980). The welfare of the child is the paramount concern in custody and visitation cases, Wilke, 196 N.J. Super. at 497, 483 A.2d 420, and even where the court must choose between a parent's right and the child's welfare it must favor the child by virtue of its responsibility as parens patriae. In Re J.R., 174 N.J. Super. at 224, 416 A.2d 62.
Next, the court must consider whether the defendant has received adequate procedural due process. "The essential components of due process are adequate notice, opportunity for a fair hearing and availability of appropriate review." Community Affairs Dep't. v. Wertheimer, 177 N.J. Super. 595, 599, 427 A.2d 592 (App.Div. 1980). "Adequate Notice" is "such notice as is in keeping with the character of the proceeding and *343 adequate to safeguard the right entitled to protection." State v. Standard Oil Co., 5 N.J. 281, 305, 74 A.2d 565 (1950), aff'd. 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951). Although the Prevention of Domestic Violence Act of 1990, requires immediate service, upon the defendant, of all pleadings, process and orders, this court questions whether such notice properly and sufficiently informs the defendant (ordinarily appearing pro se) of the impending termination of his visitation rights. Given the questionable sufficiency of the procedural due process here, this court holds that a complete and indefinite suspension of visitation is inappropriate. In addition, this court finds that suspension of visitation is the least restrictive approach only in the most extreme situations where the mere presence of the parent would visit physical or emotional harm upon the child. In all other cases suspension of visitation is improper, and supervised visitation should be ordered.
Pursuant to the court's finding of domestic violence, and in accordance with the above stated analysis, this court holds that the defendant has failed to show by the preponderance of the evidence that plaintiff's request for a risk assessment is arbitrary and capricious. Therefore, defendant is restrained from future acts of domestic violence and prohibited from having contact with the plaintiff. The plaintiff is granted exclusive possession of the parties' shared residence and custody of their child. Defendant is ordered to receive domestic violence counselling. And finally, a risk assessment is ordered and defendant is granted supervised visitation pending the outcome of that evaluation.