694 A.2d 1038

IN THE MATTER OF THE CERTIFICATE OF NEED
OF THE VISITING NURSE ASSOCIATION OF
SUSSEX COUNTY, INC.

Superior Court of New Jersey
Appellate Division

Argued May 21, 1997—Decided June 6, 1997.

Before Judges SHEBELL, BAIME and P.G. LEVY.

*Murray J. Klein* argued the cause for appellant (*Reed Smith Shaw & McClay*, attorneys; *Mr. Klein*, of counsel; *Susan D. Bonfield* and *Joseph D. Glazer*, on the brief).

*Mary F. Rubinstein*, Deputy Attorney General, argued the cause for respondent (*Peter Verniero*, Attorney General, attorney; *Mary C. Jacobson*, Assistant Attorney General, of counsel; *Ms. Rubinstein*, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

Visiting Nurse Association of Sussex County, Inc. (VNA) appeals from the denial of its application for a certificate of need (CON) to provide home health care services in Morris and Warren Counties. The State Health Planning Board (SHPB) adopted the findings of the Local Advisory Board (LAB) that (1) VNA failed to demonstrate an unmet need in Morris County and (2) the applications of other providers to furnish services in Warren County were superior and were thus entitled to a priority. The Administrative Law Judge (ALJ) determined that the SHPB's findings were supported by the record, and thus denied VNA's application. VNA contends that (1) the proceedings were procedurally defective because the SHPB did not issue a separate written decision as required by regulation, and (2) the ALJ's denial of a CON was arbitrary and capricious. We perceive no sound basis to disturb the ALJ's decision.

## I.

Under the Health Care Facilities Planning Act (*N.J.S.A.* 26:2H–1 to –18.70), no health care provider may construct new facilities or expand existing ones or initiate new services unless a CON has been granted by the Commissioner of Health. *N.J.S.A.* 26:2H–7; *see also N.J.A.C.* 8:33–3.1. In *In re Certificate of Need Granted to the Harborage,* 300 *N.J.Super.* 363, 693 *A.*2d 133 (App.Div.1997), and *In re Holy Name Hospital for a Certificate of Need,* 301 *N.J.Super.* 282, 693 *A.*2d 1259 (App.Div.1997), we described at length the statutory and regulatory framework within which decisions pertaining to applications for CONs are made. It would be superfluous to tread upon the ground so exhaustively covered in these opinions. By way of summary, the administrative process is triggered by a "call" from the Department of Health and Senior Services inviting the submission of CON applications based upon a preliminary finding of need or patient access problems. *N.J.A.C.* 8:33–4.1(a). Applications must receive the affirmative vote of at least twenty-five percent of the voting members of the LAB having jurisdiction over the applicable geographic region as well as that of the SHPB, before they will be forwarded to the Commissioner for final review. *N.J.S.A.* 26:2H–10.1(a)(1), (2). If the applicant does not obtain the approval of the requisite percentage of the voting members of either the LAB or the SHPB, it may seek a hearing by the Office of Administrative Law. *N.J.A.C.* 8:33–4.14. Upon approval of the application by an administrative law judge, the matter is then forwarded to the Commissioner for final review. However, if the ALJ sustains the LAB's or the SHPB's denial of the application, the decision is deemed a final agency determination which may be directly appealed to this court. *R.* 2:2–3(a)(2).

It is against this abstruse statutory and regulatory backdrop that we briefly recite the salient facts. In 1994, the Department of Health and Senior Services issued a call inviting the submission of CON applications for the establishment or expansion of home health agency services. The call was predicated upon a statewide

survey which disclosed a "service gap"—a gap between services provided and services needed—in home health care for medicare patients.

VNA submitted an application in response to the call, proposing to expand its existing service to meet the perceived need in both Morris and Warren counties. As described in its application, VNA has existed as a health care agency for thirty years in Sussex County. It is licensed by the Department of Health and has received medicare certification as a free-standing home health care agency.

VNA proposed to provide Morris and Warren counties with a broad range of services including "24–hour, seven day a week skilled nursing care, physical therapy, speech therapy, occupational therapy, home health aid[ ], medical social [assistance], nutritional therapy, [psychiatric care], and complex treatment modalities." It anticipated servicing five percent of the indigent population in the two counties. According to VNA, because it had extensive experience operating in rural areas, it was well-equipped to expand its services into Morris and Warren counties. VNA appended letters of recommendation from satisfied customers, as well as an agreement with the Karen Ann Quinlan Center of Hope Hospice in Newton to provide staffing for the center's home health care operations.

With respect to the need for its services, VNA furnished a study which compared the current utilization rates in each of the subject counties with the demand present in mature population markets having almost identical demographics, and identified an unmet need of 548,675 visits in Morris County and 162,946 visits in Warren County. VNA asserted that it would be able to provide substantial skilled nursing assistance in both counties. Because of the overwhelming need which it claimed existed, VNA claimed that approval of its application would have no impact on existing agencies.

VNA identified access problems in Morris and Warren counties. It stated that it could "offer the full range of complex treatment

modalities to this expanded service area." VNA identified the full range of services as "total parenteral nutrition (TPN), IV chemotherapy and pain management." As will become evident later in our opinion, no specific mention of mechanical ventilator care was made in the application or in response to supplemental requests made by the Department.

After VNA's application was certified as complete, it was forwarded to the LAB for the applicable geographical region. The LAB determined that much of the data submitted by VNA and other applicants was out of date and could not be verified. To correct this situation, the LAB created a task force charged with the responsibility of determining whether there was a service gap or patient access problem in the region. The task force subsequently issued a report indicating: (1) need and access problems were caused largely by the insufficient supply of professionals and staff in existing agencies, and (2) existing providers lacked the financial capacity to withstand additional competition. The latter finding—potential financial impairment of existing providers—was corroborated by additional evidence presented to the LAB.

The LAB initially decided that any service gap in Morris County could be satisfied by the existing providers, and that two CONs would be approved in Warren County, not because of need or patient access problems, but merely to enhance consumer choice. The recommendation to approve two CONs in Warren County was based upon N.J.A.C. 8:33L–2.4(d), which requires that every county or region be served by a minimum of three home health care providers regardless of need. The LAB recommended approval of the applications submitted by the Karen Ann Quinlan Center of Hope Hospice and the Adventist Home Health Care Services. These applications were found to have greater merit than that of VNA because the providers had better "linkages" within the respective communities and because they proposed to address specific access problems regarding complex therapies, including mechanical ventilator and infusion therapy. The LAB noted that, while VNA was an existing agency and was deserving

of some priority in ranking under *N.J.A.C.* 8:33L–2.4(b)(4), VNA did not propose to address complex modality access problems with the same comprehensiveness as the two providers whose applications were approved. Specifically, the LAB claimed the VNA had not incorporated ventilator care in its proposal.

When VNA appealed to the OAL, the LAB decided to alter its position. The LAB and VNA agreed upon a settlement in which VNA's application was forwarded to the SHPB. The agreement required the SHPB to consider VNA's application along with the two it had previously recommended.

We need not recount at length the evidence presented at the SHPB's meeting which took place on July 6, 1995. We note that testimony indicated an increase of approximately 16,500 persons of sixty-five years of age or older in Morris County by the year 2010. However, the current number of home health visits was said to be misleadingly low because unlicensed agencies had not reported their activities in Morris County and several of the licensed agencies had not responded to the Department's survey requests. The SHPB voted to reject VNA's application based upon the LAB's finding that it had not demonstrated an unmet need and that the five agencies in operation in Morris County could satisfy any potential service gap. As to Warren County, the SHPB adopted the finding of the LAB that other applications were superior to that of VNA. Although the SHPB did not issue a separate written opinion, its duly adopted minutes referred to its decision as recited in the printed transcript of its meeting.

The matter was then transferred to the OAL as a contested case pursuant to *N.J.S.A.* 26:2H–10.1(b) and *N.J.S.A.* 52:14F–1 to –13. VNA and the SHPB filed opposing motions for summary decision. On November 2, 1995, ALJ Klinger issued her final decision, accepting the findings and recommendations made by the SHPB. The ALJ determined that there was no unmet need for home health services in Morris County. Alternatively, the ALJ noted that if there was such a need, it related only to complex treatment modalities, and that VNA had not demonstrated it could

satisfy that specific need. The ALJ further concluded that VNA had not established its superiority over the two successful applicants in Warren County. This appeal followed.

## II.

Initially, we address VNA's contention that the administrative proceedings were procedurally flawed because the SHPB failed to furnish the Commissioner with a separate written decision as required by regulation. *N.J.A.C.* 8:33–4.13(c) provides in pertinent part:

> The State Health Planning Board shall furnish written decisions to the Commissioner which provide the explicit basis for any recommendations made by the Board on certificate of need applications.... These written decisions may take the form of minutes of the State Health Planning Board.

Although the regulation expressly states that the minutes of the SHPB's meeting may serve as the agency's decision, VNA argues that the failure to provide a separate written determination renders the proceedings *per se* unreasonable.

We recently rejected the identical argument in *In re Holy Name Hospital for a Certificate of Need,* 301 *N.J.Super.* 282, 290–93, 693 *A.*2d 1259 (App.Div.1997). There, we held that "[a]s long as the minutes or the transcript contain a particularized explication and articulation of the SHPB's reasons for either granting or denying approval, it should suffice, and the administrative law judge must accept it as the written decision of the agency." *Id.* at 293, 693 *A.*2d 1259. We stressed, however, that "the SHPB must act as a unitary administrative agency." *Ibid.* While comments from individual members are part of the record and may serve to elucidate the considerations that were weighed by the agency, we said that "neither the OAL, nor the Commissioner nor a reviewing court should be required to 'count heads' to determine whether a consensus was reached." *Ibid.* We thus emphasized that the "SHPB must, as an administrative body, state its reasons with particularity, but it may perform this vital function by setting forth its findings and conclusions in the properly adopted minutes

of its meeting or in a motion or resolution contained in the [printed] transcript." *Ibid.*

We conclude, as we did in our *Holy Name* decision, that the minutes and transcript of the SHPB's meeting marginally satisfy the regulatory requirement. While the findings made by the SHPB are not nearly so clear, full and well-organized as one might reasonably expect, the reasons for the agency's recommended denial of VNA's application can fairly be discerned by an examination of the duly adopted minutes and the transcript. Although we expect that the SHPB will provide more particularized explications in future cases, we perceive no real need to impede the administrative process and delay final disposition of the issues by ordering a remand. *See In re Howard Sav. Inst. of Newark*, 32 *N.J.* 29, 53, 159 *A.*2d 113 (1960). Examination of the copious briefs submitted discloses beyond peradventure that the interested parties "can and do understand fully the meaning of the [agency's] decision." *Ibid.* The ALJ had no difficulty understanding the SHPB's reasons for denying VNA's application, as her written decision makes abundantly clear. And finally, while we would have preferred greater precision in the SHPB's articulation of findings and conclusions, we discern no impediment to our ability to consider and address the substantive issues presented.

### III.

We perceive no sound basis to reverse the ALJ's denial of VNA's application for a CON. We begin by citing the controlling principles. It is settled that arbitrary and capricious action taken by an administrative agency must be overturned. *Worthington v. Fauver*, 88 *N.J.* 183, 204, 440 *A.*2d 1128 (1982). In fact, an appellate court not only is privileged, but required to set aside arbitrary and capricious agency action. *Drake v. Department of Human Servs.*, 186 *N.J.Super.* 532, 536, 453 *A.*2d 254 (App.Div.1982). The burden is on the party challenging the validity of an agency's decision to demonstrate that the action was arbitrary, capricious or contrary to a legislative purpose. *Medical*

*Soc'y of New Jersey v. Department of Law & Pub. Safety*, 120 *N.J.* 18, 25, 575 *A.*2d 1348 (1990); *Smith v. Ricci*, 89 *N.J.* 514, 525, 446 *A.*2d 501, *appeal dismissed*, 459 *U.S.* 962, 103 *S.Ct.* 286, 74 *L.Ed.*2d 272 (1982). A "strong presumption of reasonableness" must be accorded the agency's exercise of its statutorily delegated duties. *City of Newark v. Natural Resource Council*, 82 *N.J.* 530, 539, 414 *A.*2d 1304, *cert. denied*, 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.*2d 245 (1980). This presumption is even stronger when the agency has delegated discretion to determine the technical and special procedures to accomplish its task. *Id.* at 540, 414 *A.*2d 1304. When there is room for two courses of action, an administrative decision will not be deemed arbitrary and capricious if exercised honestly and the course ultimately chosen is a reasonable one. *Worthington v. Fauver*, 88 *N.J.* at 204–05, 440 *A.*2d 1128; *Bayshore Sewerage Co. v. Department of Envtl. Prot.*, 122 *N.J.Super.* 184, 199, 299 *A.*2d 751 (Ch.Div.1973), *aff'd o.b.*, 131 *N.J.Super.* 37, 328 *A.*2d 246 (App.Div.1974). Conversely, "a determination predicated on unsupported findings is the essence of arbitrary and capricious action." *In re Boardwalk Regency Corp.*, 180 *N.J.Super.* 324, 334, 434 *A.*2d 1111 (App.Div.1981), *modified on other grounds*, 90 *N.J.* 361, 447 *A.*2d 1335 (1982).

In reviewing an agency decision, we must survey the record to determine if sufficient credible evidence supported that determination. *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 587, 538 *A.*2d 794 (1988). Even if we might have chosen a different course, the agency's decision must be affirmed if supported by the record. *Id.* at 588, 538 *A.*2d 794. We are not free to substitute our judgment as to the wisdom of a particular agency action so long as it is statutorily authorized and not otherwise defective as arbitrary and capricious. *New Jersey Guild of Hearing Aid Dispensers v. Long*, 75 *N.J.* 544, 562–63, 384 *A.*2d 795 (1978).

We first consider the ALJ's disposition of the issues relating to VNA's application to provide home health services in Morris County. The ALJ concluded that the SHPB carefully considered VNA's need projections but acted reasonably in reject-

ing them.   The ALJ did not err in reaching this conclusion. VNA's data was not verifiable and was not based on any approved standard.

Although ambiguously phrased, VNA contends alternatively, as it did before the ALJ, that in determining whether "access problems" existed in Morris County, the SHPB and the OAL were bound by the most recent home health agency survey that was in place at the time the applications for CONs were accepted by the Department.   As we understand VNA's argument, the thesis is that once the Department identifies a home health care need as shown by its home health agency survey, the LAB, the SHPB and the OAL are bound by that finding and no party or agency may contest it.   The Attorney General's position on this point is somewhat confusing.   The Attorney General defends the LAB's rejection of the data provided in the Department's 1991 home health survey, but at another point in the brief argues that "for purposes of uniformity and regulatory compliance," reliance should be exclusively placed "on the 1991 survey data rather than [on] applicant-generated submissions."

Stripped to its essentials, the precise issue is whether the applicant and the relevant administrative agencies are bound by the Department's preliminary finding of need in issuing its call for applications for CONs. It is arguable that we need not resolve the question here because the SHBP determined that, assuming the existence of patient access problems, the five existing home health providers in Morris County could satisfy any projected need, and the record fairly supports that conclusion.   We note, however, that the issue is a recurrent one, and, in our view, requires immediate resolution.   In urging that we ignore the data contained in VNA's application and rely solely upon the 1991 home health care survey prepared by the Department, the Attorney General refers us to *N.J.A.C.* 8:33L–2.4(a)(3).   That regulation requires applicants proposing to expand an existing home health agency's service area or to institute a new agency to submit "[d]ocumentation of home health care access problems in the

service area." *Ibid.* The applicant bears the burden of providing "compelling evidence" that such access problems "will be substantially ameliorated by the new agency." *Ibid.* Under the regulation, "[w]here data from annual surveys conducted by the Department ... form the basis for identifying the service area's access problems ..., the most recent, annual home health agency survey data that are available at the time that the [c]ertificate of [n]eed applications are accepted for processing shall be utilized." *Ibid.* We do not read this regulation as barring the applicant or the relevant administrative bodies from utilizing additional information in seeking to resolve the critical question whether there are patient access problems in the region. Instead, we construe the regulation as requiring that the most recent annual home health agency survey data available at the time the CON applications are processed *should be utilized* "[w]here data from annual surveys conducted by the Department ... form the basis for identifying the service area's access problems...." *Ibid.* Stated somewhat differently, we know of no statutory or regulatory provision binding the interested parties to the Department's preliminary finding of need made in issuing its call for applications for CONs.

In the context of the facts here, VNA had the right to present additional data supporting its contention that patient access problems existed in Morris County, and the LAB and the SHPB had the corollary right to reject this evidence and rely upon its own information with respect to the question of need. Neither the applicant nor the administrative agencies were bound by the Department's 1991 home health survey.

The ALJ found alternatively that VNA did not present compelling evidence its expansion into Morris County would alleviate patient access problems identified in the Department's 1991 home health survey. The 1991 survey indicated that Morris County residents were being denied access to "complex treatment modalities." *N.J.A.C.* 8:33L–2.4(a)(3)(iii) defines "complex treatment modalities" as including "mechanical ventilator care, intravenous and central line infusion therapies." The ALJ determined

that VNA's application did not propose that it would supply "infusion therapies and mechanical ventilator care." Our examination of the record reveals that the ALJ was only partially correct in making this finding. VNA's application proposed to offer "the full range of complex treatment modalities." Moreover, VNA specifically indicated in its responses to a supplemental questionnaire that it was planning to provide infusion therapies and was taking steps to have its nurses certified. However, neither in its application nor in its response to the supplemental questionnaire was any reference made to ventilator care. Further, in its application VNA referred to "complex treatment modalities" in terms limited to "total parenteral nutrition (TPN), IV chemotherapy and pain management." Based on the record, the ALJ could reasonably have concluded that VNA never proposed specifically to provide ventilator treatment in either Morris or Warren County.

We next turn to whether the ALJ acted in an arbitrary or capricious manner when she denied VNA's application to provide home health care in Warren County. We find substantial support in the record for the ALJ's conclusion that the applications of two other providers were superior to that of VNA. For the reasons noted previously, the ALJ reasonably could have concluded that VNA's application was faulty because it did not specifically offer to provide mechanical ventilator treatment. In assessing the priority or ranking of competing applicants, the ALJ was authorized to consider which of the providers offered "[t]he broadest range of services...." *N.J.A.C.* 8:33L–2.4(b)(1). The ALJ's conclusion that VNA's proposal was not sufficiently comprehensive to alleviate the patient access problem identified by the Department in its annual home health survey was grounded in the evidence. As to other factors considered by the ALJ, we add that although VNA presented substantial evidence of potential referrals by other agencies, we cannot say that its proofs on the subject were more persuasive than that advanced by the successful applicants. In short, we discern no reason to intervene.

Affirm.