915 A.2d 1074

IN RE APPLICATION OF VIRTUA–WEST JERSEY HOSPITAL VOORHEES FOR A CERTIFICATE OF NEED.

Superior Court of New Jersey
Appellate Division

Argued October 4, 2006—Decided February 8, 2007.

Before Judges KESTIN, PAYNE and LIHOTZ.

*John C. Connell* argued the cause for appellants Cooper Health System and Our Lady of Lourdes Medical Center (*Archer & Greiner*, attorneys; *Mr. Connell* and *Robert J. Fogg*, on the brief).

*Rachana Munshi*, Deputy Attorney General, argued the cause for respondent Department of Health and Senior Services (*Stuart Rabner*, Attorney General, attorney; *Michael Haas*, Assistant Attorney General, of counsel; *Melissa H. Raksa*, Deputy Attorney General, and *Ms. Munshi*, on the brief).

*Philip H. Lebowitz* of the Pennsylvania bar, admitted pro hac vice, argued the cause for respondent-intervenor Virtua–West Jersey Hospital Voorhees (*Duane Morris*, attorneys; *Frank A. Luchak* and *Steven M. Richman*, of counsel; *R. Christopher Raphaely* and *Mr. Lebowitz*, on the brief).

The opinion of the court was delivered by

KESTIN, P.J.A.D.

Cooper Health System and Our Lady of Lourdes Medical Center appeal from the October 5, 2004 final decision of the

Deputy Commissioner for Public Health Services of the Department of Health and Senior Services (Commissioner; Department) approving a certificate of need (CN) application from Virtua–West Jersey Hospital Voorhees (Virtua), allowing Virtua to change its maternal and child health care (MCHC) designation from Community Perinatal Center–Intensive (CPC) to Regional Perinatal Center (RPC), so that it would be authorized to provide a broader range of services. Appellants, in a single point of argument with several facets, contend that the approval granted was invalid because the Commissioner, without sound basis, failed to comply with regulatory requirements governing CN calls, particularly *N.J.A.C.* 8:33–4.1(a), and thus erred in applying the CN process in this matter. We granted Virtua's motion for leave to intervene in the appeal; and we denied, as had the Commissioner, appellants' motion for a stay of the decision pending appeal. We now affirm.

On March 3, 2003, the Department issued a "Notice of Rescheduling of Certificate of Need Call for Applications for Maternal and Child Health Consortia Change in Membership and Intermediate and Intensive Bassinets in Certain Maternal and Child Health Consortia Regions." 35 *N.J.R.* 1311(b). The notice invited

> certificate of need applications on a full review basis for Maternal and Child Health Consortia change in membership, and for intermediate and intensive bassinets in licensed general hospitals in those Maternal and Child Health Consortia (MCHC) regions in which a need has been identified based on the most recent utilization projections.
> [*Ibid.*]

This CN call specified the needs for both intermediate and intensive care bassinets in the Southern NJ Perinatal Cooperative, Inc., as well as in other areas of the State. *See ibid.*

In response, Virtua submitted a timely application dated May 1, 2003. It sought approval "to change its designation from a Community Perinatal Center–Intensive to a Regional Perinatal Center and to add four intensive care bassinets and eight intermediate care bassinets[.]"

Following Virtua's submission of additional information as requested, the Department, on April 12, 2004, announced that the

application was complete. Pursuant to *N.J.A.C.* 8:33, the Department referred Virtua's application to the State Health Planning Board (SHPB) for "the full review process" and, on July 8, 2004, "to consider applications, receive public comment and make recommendations to the Commissioner." On June 30, 2004, appellants objected to the Department's decision to accept the designation-changing aspect of Virtua's application and requested that Virtua's "request for a change in designation level not be permitted to move forward at this time to the [SHPB]."

On July 8, 2004, the SHPB held a meeting, at which the Department staff submitted a report recommending that the SHPB approve Virtua's application in its entirety, including, for reasons stated, its redesignation as an RPC. The SHPB also entertained public comment on the application. Appellants' representatives were heard, among others, and their written presentations were received. Cooper Health System's representative stated: "If Virtua is approved, there will be a serious and damaging impact on the existing Regional Perinatal Center in Camden." Further, he said: "no study has been conducted that has identified the need for [an] additional Regional Perinatal Center in South Jersey." He opined that "changes in designation level specifically require ... the full review in [the] CN process and [a] separate CN call which was not accomplished here." He questioned, "[H]ow did the Department allow Virtua to request a change in designation ... when the Department itself never issued the CN call for a change in designation ... ?" He concluded by stressing that, if Virtua were designated as an RPC, then appellants "will have to cut off services to the indigent in Camden...."

The SHPB considered all the data it had received and views it had heard. Following discussion among its members that reflected a weighing of pertinent considerations, the SHPB voted to approve Virtua's CN application in its entirety. The approval on the redesignation issue was by a vote of five votes in the affirmative and one vote in the negative.

On October 4, 2004, appellants wrote the Commissioner with a "request that [he] invalidate that part of the Virtua application pertaining to a change in perinatal designation level...." Nevertheless, on October 5, 2004, the final decision issued, approving Virtua's CN application in its entirety. The decision stated that the Commissioner was "satisfied that Virtua's RPC designation would not impact current referral patterns of the other two RPCs in the consortium region (Our Lady of Lourdes Medical Center and Cooper Hospital), since the majority of Virtua's projected additional patients would originate from within the Virtua Health System." Furthermore, according to the decision, "the balance of Virtua's additional patients [is] anticipated to be from Virtua's service area who currently outmigrate to Philadelphia hospitals." Hence, "Virtua has sufficiently documented that its RPC designation would primarily reduce current transfers out of Virtua's system and recapture patients going out of state, rather than compete with the existing Camden City RPCs for their patients." Ultimately, "Virtua's project will provide families who choose Virtua the opportunity to receive Regional Perinatal Center level services at the same location, will improve their access to care and reduce incentives for these families to leave New Jersey to get more complex services out of state."

Specifically with respect to the redesignation application, the Commissioner found that Virtua met the requirements of *N.J.A.C.* 8:33C–3.4(a) by establishing the required number of very low birth weight infants annually. Furthermore, the decision stated: "Virtua has also documented that all professional staff necessary for RPC designation are currently in place." Therefore, "being satisfied that [Virtua] has documented compliance with the applicable statutory and regulatory criteria," the Commissioner approved Virtua's application in full, as recommended by the SHPB.

We reject appellant's argument that we should reverse the Commissioner's decision on the redesignation question because it constituted an ultra vires act. Out of respect for the Legislature's commitment of regulatory control to an agency's expertise

and well-considered discretion, we will not upset the ultimate determination of the agency unless it is established that the challenged action was outside the scope of its authority; or that it was arbitrary, capricious or unreasonable; or that it violated legislative policies expressed or fairly implied in the act governing the agency; or that the findings on which the decision was based were unsupported by the evidence. *See Campbell v. Dep't of Civil Serv.*, 39 *N.J.* 556, 562, 189 *A.2d* 712 (1963). An appellate court "is, however, in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." *Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety*, 64 *N.J.* 85, 93, 312 *A.2d* 497 (1973). We are, nevertheless, obliged to accord "substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing." *Saint Peter's Univ. Hosp. v. Lacy*, 185 *N.J.* 1, 15, 878 *A.2d* 829 (2005)(quoting *Smith v. Director, Div. of Taxation*, 108 *N.J.* 19, 25–26, 527 *A.2d* 843 (1987)).

It is axiomatic that the scope of appellate review is limited with respect to an agency's factfinding. The court will decide only whether the findings made could reasonably have been reached on "sufficient" or "substantial" credible evidence present in the record, considering the proofs as a whole. The scope of appellate review is likewise limited where an agency's expertise is a factor in the decision. *See In re Taylor*, 158 *N.J.* 644, 656–57, 731 *A.2d* 35 (1999).

In 1971, the Legislature adopted the Health Care Facilities Planning Act (the Act), *N.J.S.A.* 26:2H–1 to –26, "declar[ing it] to be the public policy of the State that hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health." *N.J.S.A.* 26:2H–1. The Act confers upon the Department "the central responsibility for the development and administration of the State's policy with respect to health planning, hospital and related health care services and health care facility cost containment programs[.]" *Ibid.* The Act

establishes the CN process as the primary method for approving construction or expansion of health care facilities and the institution of health care services. *See N.J.S.A.* 26:2H–7. Certain services are exempt from the CN process, *see, e.g., N.J.S.A.* 26:2H–6.1; *N.J.S.A.* 26:2H–7a; *N.J.S.A.* 26:2H–7c; *N.J.A.C.* 8:33–6.1, but the subject matter of the instant application is not among the exemptions.

An application for a CN must meet certain requirements, among which are:

> No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, will not have an adverse economic or financial impact on the delivery of health care services in the region or Statewide, and will contribute to the orderly development of adequate and effective health care services. In making such determinations there shall be taken into consideration (a) the availability of facilities or services which may serve as alternatives or substitutes, (b) the need for special equipment and services in the area, (c) the possible economies and improvement in services to be anticipated from the operation of joint central services, (d) the adequacy of financial resources and sources of present and future revenues, (e) the availability of sufficient manpower in the several professional disciplines, and (f) such other factors as may be established by regulation. The State Health Plan may also be considered in determining whether to approve a certificate of need application.
>
> [*N.J.S.A.* 26:2H–8; *see also N.J.A.C.* 8:33–4.9.]

The Legislature, in *N.J.S.A.* 26:2H–5b, mandated the adoption of "rules and regulations ... to effectuate the provisions and purposes of this act." Accordingly, the Commissioner has promulgated general regulations pertaining to the CN application and review process, *N.J.A.C.* 8:33–1.1 to –6.2, and specific regulations pertaining to the CN application and review process for MCHCs, *N.J.A.C.* 8:33C–1.1 to –7.3. *N.J.A.C.* 8:33–4.1 provides for review cycles and submission dates premised on the concept that the Commissioner is empowered to call for the submission of CN applications on an established and announced schedule. *See N.J.S.A.* 26:2H–7c.c. Ultimately, the Department has control over whether to review an application. "An application which is unresponsive to the notice issued by the Commissioner ... may be declared not acceptable for processing by the Department." *N.J.A.C.* 8:33–4.5(b).

The precise question posed in this case is whether the CN application process requires the Commissioner to call for an application of a certain type before he may review a proposal. Prior to the Legislature's modifications of the CN application process in 1998, we stated in respect of CN calls, that "the administrative process is triggered by a 'call' from the Department of Health and Senior Services inviting the submission of [CN] applications based upon a preliminary finding of need or patient access problems[,]" *In re Certificate of Need of the Visiting Nurse Ass'n,* 302 *N.J.Super.* 85, 89, 694 *A.*2d 1038 (App.Div. 1997); and that "an application to provide a particular health care service cannot be submitted until the Department issues a 'call,' . . . inviting the submission of [CN] applications for that specific service[,]" *In re Certificate of Need Granted to The Harborage,* 300 *N.J.Super.* 363, 368, 693 *A.*2d 133 (App.Div.1997).

In these passages, we were describing the customary course of the CN process. We did not intend to suggest that the Commissioner, under current standards governing the CN process, acts in an ultra vires manner in choosing to pass upon a feature of a CN application not within the expressed scope of a call, but germane to it. It is essential, however, that those affected by the proposal have actual notice of it and an adequate opportunity to submit their views and objections for consideration at all significant stages of the process. The Commissioner's discretionary action in approving Virtua's application for a change in MCHC designation from CPC to RPC was not arbitrary, capricious or unreasonable; it did not violate express or implied legislative policies; and there was sufficient credible evidence in the record developed to support the Commissioner's findings that all pertinent criteria had been met.

Both the Department and Virtua concede that the CN call in question did not solicit the application Virtua made regarding a change in its MCHC designation. But, no provision of statute or regulation requires a specific call before the Department can consider a particular aspect of a CN application. We are unaware

of any expressed limitation on the Commissioner's discretion to review and approve a contextually related application for a change of designation in the absence of a specific call for such a change; and appellants' arguments have provided no basis from which such a limitation may be construed.

The statutory focus in such matters is upon "the action proposed in the application[,]" *see N.J.S.A.* 26:2H–8, *i.e.,* the decision whether to grant a CN is based upon the contents of the application, not the need identified in the call. Although *N.J.A.C.* 8:33–4.5(b) establishes the Department's discretion not to review applications that are unresponsive to the notices sent out by the Commissioner, that regulation does not require the Department to reject aspects of CN applications that go beyond the specific needs identified in the call but relate to it. We must defer to the Commissioner's determination that he has the authority under the current statutory and regulatory scheme to employ his discretion in deciding whether to review or reject the portion of an application that goes beyond the precise scope of the call. *See Saint Peter's, supra,* 185 *N.J.* at 15–17, 878 *A.2d* 829.

The call system provides a structure for the Department to evaluate the needs within an area of service and to invite the submission of applications for certificates to fill those needs. The March 2000 report of the Certificate of Need Study Commission noted that the call system in place at that time resulted "in irregular calls for applications" and a lack of ability to "predict[] when such calls will occur." Procedures adopted in response to those identified defects now provide for the regularly-scheduled submission of batched applications. *See N.J.A.C.* 8:33–4.1(a)(2). A regulation emphasizes that acceptance of batched applications does not connote that needs identified by applicants represent the needs the Department may actually find to exist. *N.J.A.C.* 8:33–4.1(a)(3).

The scheduled-call mechanism requires the Department to analyze needs on a regular and timely basis, *see N.J.A.C.* 8:33–4.1(c), and it allows the Department to manage its workload, because the

Department must review those applications that conform to the requirements of the call notice. There is no concomitant restriction in statute or regulation, however, that limits the Department from recognizing a germane need identified by an application that was not expressly within the four corners of the call. In requiring the Commissioner to issue calls on a regular basis, the Legislature did not mandate that the Department issue a call regarding a specific need before it could review an application for a CN. Ultimately, the need identified in the call, without more, is not outcome determinative. Therefore, it is within the discretionary authority of the agency to recognize a need not previously identified and to approve or disapprove a proposal as the public interest may require, as long as appropriate procedural protections are provided for those affected by the proposal to make a case for and against it.

We hold, therefore, that the Commissioner's decision to review and approve Virtua's application for a change of designation in the absence of a specific call in that regard did not violate legislative polices as expressed or implied in the Act. The Department's review of Virtua's application met all of the statutory and regulatory requirements associated with a CN application. The Commissioner recognized that the issuance of a CN must be based upon the applicant's fulfillment of statutory and regulatory criteria, specifically *N.J.S.A.* 26:2H–8, *N.J.A.C.* 8:33 and *N.J.A.C.* 8:33C. The Commissioner applied the standards elaborated in *N.J.S.A.* 26:2H–8 to Virtua's application and, in granting the redesignation request, found "documented compliance with the applicable statutory and regulatory criteria," including satisfaction of all four of the specified tests. Appellants and others affected had notice and the opportunity to be heard. Thus, the Commissioner's decision was consistent with both the express and implied policies of the Act.

Our independent review of the record discloses that the findings upon which the Commissioner's decision was based were supported by sufficient credible evidence. According to the Depart-

ment staff, Virtua complied with the statutory criteria elaborated in *N.J.A.C.* 8:33 and 8:33C. The staff's recommendation bespoke a painstaking review of Virtua's application and a detailed analysis of Virtua's compliance with statutory requirements.

■ We conclude that the Commissioner's approval of the redesignation application did not amount to an ultra vires act because of the absence of a specific call in that regard. Once the Department issues a call, it is required to consider all applications answering that call; however, the absence from the call of a specific end does not require the Department to reject an application for the non-specified result. As long as essential procedural safeguards are in place, it is within the Commissioner's discretion whether or not to consider that aspect of the application. The review and approval of Virtua's application complied with all statutory and regulatory mandates, as well as with essential procedural requirements.

In reaching our conclusion, we take as a guide the Supreme Court's approach in *Saint Peter's,* according substantial deference to departmental choices in administering a subject matter area affected by statutory CN requirements. Here, the Commissioner's exercise of discretion in considering the proposal for redesignation in the absence of a call in that regard must also be respected. Appellants have not demonstrated any prejudice they suffered in the procedures employed that would not have been experienced if Virtua's proposal for redesignation had been preceded by a call.

Affirmed.