ROCKAWAY VALLEY REGIONAL SEWERAGE AUTHORITY, APPELLANT, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 7, 1984—Decided April 5, 1984.

Before Judges MICHELS, KING and DREIER.

*Joseph J. Maraziti, Jr.* argued the cause for appellant (*Maraziti, Kalish & Gregory,* attorneys; *Joseph J. Maraziti, Jr.* of counsel; *Joseph J. Maraziti, Jr., Lawrence H. Kalish* and *James R. Gregory,* on the brief).

*Paul H. Schneider,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General

of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Paul H. Schneider,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MICHELS, P.J.A.D.

Rockaway Valley Regional Sewerage Authority (Rockaway) appeals from a final administrative action of the New Jersey Department of Environmental Protection (DEP) that established the order in which federal and state funding would be awarded for the construction of water pollution control facilities. Rockaway challenges DEP's determination, as set forth in its 1982–1983 priority system and project list, to (1) reduce the federal funding level from 75% of eligible costs to 65% of eligible costs and (2) provide state assistance in the form of state loans rather than partial state matching grants. Rockaway essentially contends that the actions of DEP in reducing the level of federal funding for the second phase of its project and changing the state's contribution from a grant to a loan are arbitrary and capricious and not supported by law.

## I.

### DEP'S DETERMINATION TO REDUCE THE PERCENTAGE OF FEDERAL FUNDING.

■ Rockaway asserts that DEP "committed" itself to finance the second phase of its sewerage treatment project at the 75% level and therefore its action in reducing funding to 65% of the eligible costs of construction was arbitrary and capricious and contrary to its prior commitments. We disagree. We are entirely satisfied from our study of the record and the arguments presented that the determination of DEP to reduce the federal funding from 75% to 65% was not arbitrary or unreasonable, did not constitute a mistaken exercise of discretion and is amply supported by the record. *Campbell v. Dept. of Civil Service,* 39 *N.J.* 556, 562 (1963). *See also In re Suspension of*

*Heller*, 73 *N.J.* 292, 309 (1977); *Bayshore Sew. Co. v. Dep't of Env., N.J.*, 122 *N.J.Super.* 184, 199–200 (Ch.Div.1973) aff'd o.b. 131 *N.J.Super.* 37 (App.Div.1974). Moreover, we find that all arguments raised with respect to this issue are clearly without merit. *R.* 2:11–3(e)(1)(E).

33 *U.S.C.* 1282(a)(1) expressly authorizes the states to reduce the federally funded percentage of construction costs below the 75% maximum therein established. This statute, in part, provides:

> (a)(1) *The amount of any grant for treatment works* made under this chapter from funds authorized for any fiscal year beginning after June 30, 1971, and ending before October 1, 1984, *shall be 75 per centum of the cost of construction thereof* (as approved by the Administrator), and for any fiscal year beginning on or after October 1, 1984 shall be 55 per centum of the cost of construction thereof (as approved by the Administrator), *unless modified to a lower percentage rate uniform throughout a State by the Governor of that State with the concurrence of the Administrator.* [Emphasis added].

Governor Thomas Kean, by letter dated January 4, 1983, wrote to Jacqueline E. Schafer, the Regional Administrator of the EPA, and requested approval of this uniform reduction in the percentage rate from 75% to 65% of eligible project costs. The reduction in the percentage of funding received the approval of the EPA at the time the fiscal 1982–1983 priority list was approved. This reduction in the percentage of federal funding was authorized and accomplished pursuant to law.

Furthermore, the actions of the DEP in reducing the percentage of funding were not unreasonable, arbitrary or capricious. The reduction was necessitated by a tremendous decrease in the amount of available federal funding. New Jersey's share of the federal grant monies, which prior to the enactment of the Municipal Wastewater Treatment Construction Grant Amendments of 1981 had averaged $200 million per year, was reduced by these amendments to $85 million for fiscal 1982 and to $100 million per year for fiscal years 1982 through 1985. *See* 33 *U.S.C.* §§ 1285(c)(2), 1287. Thus, although it is estimated that New Jersey will have $2.4 billion in priority sewerage projects ready for construction within the four year period from 1982

through 1985, the State will receive only $385 million in federal monies to fund these projects. By reducing the federal share from 75% to 65% the State will provide federal funding to a greater number of water quality improvement projects, a course of action which is certainly reasonable in the circumstances. Indeed the propriety of this course of action in view of the magnitude and number of projects necessary to restore and maintain the integrity of this State's waters is evidenced by the expressed desire of the United States Environmental Protection Agency (EPA) that New Jersey further reduce the federal share to 55% as of the 1982–1983 priority list. The record indicates that even at the 65% level, federal funding will be available for only 23 out of the 238 projects contemplated for this state in the period extending from fiscal 1982 through 1985.

Rockaway, in a prior appeal (*Department of Health v. City of Jersey City*, Docket Nos. A–38–81T1, A–457–81T1, A–685–81T1, A–686–81T1, A–687–81T1, A–1244–81T1 (Decided Feb. 16, 1983) (unpublished opinion)) raised a similar argument, which was likewise rejected. There Rockaway had asserted that DEP's refusal to certify its project to the EPA was arbitrary because (1) it was the only remaining unfunded project in the project completion category and (2) all of the projects with rankings higher than Rockaway's on the original fiscal 1981 priority list had either been certified for funding or been bypassed because they were not ready to proceed. Rockaway sought an order compelling DEP to grant its project completion category status and to have the project certified for federal funding. At this time there remained uncommitted federal grant monies, and the DEP was engaged in revising its fiscal 1981 priority list. Relying on 40 *C.F.R.* § 35.915(f), this court stated that, "even assuming that Rockaway was the next project that would have been funded under the unrevised fiscal 1981 priority list, DEP was under no obligation to certify Rockaway's construction project for a federal grant." As provided by 40 *C.F.R.* § 35.915(f):

(f) *Revision of the project priority list.* The State may modify the project priority list *at any time* during the program planning cycle in accordance with the public participation requirements and the procedure established in the approved State priority system.... [Emphasis added].

Similarly, New Jersey is permitted pursuant to 33 *U.S.C.* 1282(a)(1) to uniformly reduce the percentage of federal funding supplied, and as this course clearly serves the beneficial purpose of increasing the number of projects receiving federal funds, such a reduction may not be held arbitrary as to an individual project merely on the basis of an alleged commitment for funding at a 75% level.

Accordingly, the final determination of the DEP to reduce the federal funding level for fiscal years 1982–1983 from 75% of the eligible costs to 65% of the eligible costs is affirmed.

## II.

## DEP'S DETERMINATION TO CHANGE THE FORM OF STATE ASSISTANCE FROM GRANTS TO LOANS.

■ The DEP proposed to eliminate state grants for fiscal years 1982–1983 and to replace them with state loans. Rockaway contends that this decision is arbitrary and capricious, and not supported by law. In support of this argument, it points out that the Sewerage Facilities Aid Program, *N.J.S.A.* 58:25–1 *et seq.*, authorizes only grants to defray construction costs (*see N.J.S.A.* 58:25–8), and that by the terms of the Natural Resources Bond Act of 1980 (*P.L.*1980 *c.* 70) ("Bond Act"), grants are the only means by which the funds authorized by the Bond Act may be dispersed to such sewerage construction projects. *See P.L.*1980 *c.* 70 § 4b. Rockaway therefore argues that the making of such loans contradicts statutory directive and the intent expressed by the public referendum. We agree.

Although the Sewerage Facilities Aid Program authorizes the Commissioner of the DEP to make loans to local governmental units for the preparation of preliminary engineering plans, detail design, drawings and specifications, and for contract

documents (*see N.J.S.A.* 58:25–5), this act authorizes only the making of grants with respect to the actual construction costs incurred in connection with eligible water pollution control projects. *See N.J.S.A.* 58:25–8. This statute, in part, provides:

> . a. The commissioner is hereby authorized, subject to the availability of funds, to make grants to any county or municipality, or any combination or agency thereof, or to any State or interstate agency, to assist such governmental units or agencies in the construction of those water pollution control projects as qualify for Federal aid and assistance under the provisions of the "Federal Water Pollution Control Act," and any acts amendatory thereof or supplemental thereto or revisions thereof, and any regulations promulgated pursuant thereto.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*
>
> d. The Commissioner of Environmental Protection shall prescribe the procedures for applying for the grants authorized by this section and may adopt such rules and regulations as may be necessary to implement the provisions of this section and to carry out its purpose. [*N.J.S.A.* 58:25–8a, d].

The Bond Act authorized the creation of a State debt by the issuance of bonds in the aggregate principal amount of $145,-000,000 for the funding of resource recovery facilities, sewerage treatment facilities, water supply facilities, dam restoration projects and harbor clean up projects, subject to approval by public referendum. The Bond Act received voter approval in the November 1980 general election. This act specifically provided that "[o]f the total monies available under this act, $60,000,000 is allocated for matching grants to local governments for planning, designing, acquiring and constructing sewerage treatment facilities." *P.L.*1980, *c.* 70 § 4b. The Bond Act contains no provision pursuant to which the monies available may be distributed for constructing sewerage treatment projects in the form of loans. Likewise, the regulations prescribing procedures for the application, award and administration of these grant monies contain no mechanism for the making of loans. *See N.J.A.C.* 7:22–1.1 *et seq.*

By way of review, examination of the Sewerage Facilities Aid Program indicates, as Rockaway maintains, that the Legislature has authorized only the making of state grants to fund the construction costs of eligible sewerage projects. Further, the Bond Act authorizes appropriations only in the form of grants

for such project costs, and regulations exist only to implement a program of state grants, and not state loans. Nonetheless, the DEP has determined, as set forth in its fiscal 1982–1983 priority list, that state funding will be provided only in the form of loans. DEP conceded that legislation is necessary to implement such a program. However, to date, no such legislation has been enacted. Fiscal 1983 ended September 30, 1983. Much of the monies authorized by the Bond Act to be allocated for grants to aid construction of sewerage treatment facilities remain unutilized. This situation where such monies lie idle frustrates the intent of the legislature as expressed by the Sewerage Facilities Aid Program and that of the people of this State as evidenced by the referendum vote approving the Bond Act.

Thus, Rockaway finds itself in a situation where it cannot receive a loan until appropriate legislation is enacted. Consequently, we are satisfied that the DEP did not have the authority or power to change the form in which funds would be provided for the construction of water pollution control facilities for fiscal 1982–1983 from grants to loans. The power to make this change lies with the Legislature. DEP's actions in this respect therefore were arbitrary and capricious and not supported by law.

Accordingly, the determination of DEP to provide state assistance in the form of loans rather than grants is reversed and the matter is remanded to DEP to reconsider Rockaway's application for a construction grant for the second phase of its sewerage treatment plant.[1] We do not retain jurisdiction.

---

[1]Relying upon statements made by the DEP in the course of obtaining approval of the revised 1981 priority list, Rockaway argues that a commitment had been made by the DEP to provide grant monies for all phases of the project. Even assuming this to be an accurate characterization of what transpired, we could not enforce such a "commitment". As noted in the main body of the opinion, the Legislature must appropriate the funds for the project. All we can do is remand the matter for processing of the application by DEP.