**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0621-17T2

IN THE MATTER OF TOWERS
ASSOCIATES' MOTION REQUESTING
THAT MEPT LINCOLN CROSSING'S
WITHDRAWAL OF ITS VARIANCE
APPLICATION BE CONSIDERED
AS WITH PREJUDICE.

_____

Submitted January 10, 2019 – Decided July 30, 2019

Before Judges O'Connor and DeAlmeida.

On appeal from the New Jersey Sports & Exposition Authority.

Sills Cummis & Gross, PC, attorneys for appellant Towers Associates (Joseph B. Fiorenzo and Kristoffer S. Burfitt, on the briefs).

Waters Mc Pherson Mc Neill, PC, attorneys for respondent MEPT Lincoln Crossing, LLC (Eric D. Mc Cullough, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Sports & Exposition Authority (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Ryan C. Atkinson, Deputy Attorney General, on the brief).

PER CURIAM

Respondent MEPT Lincoln Crossing, LLC (MEPT) submitted an application to the New Jersey Sports and Exposition Authority (NJSEA) seeking a use variance and site plan approval. After the NJSEA staff commenced public hearings, MEPT withdrew its application without prejudice. Thereafter, appellant Towers Associates, an objector to the application, filed a motion with NJSEA requesting MEPT's application be deemed withdrawn with prejudice or, in the alternative, that MEPT compensate appellant for the counsel and expert fees and costs it incurred to object to MEPT's application. In a resolution dated September 21, 2017, the NJSEA Board of Commissioners (Board) denied MEPT's motion. Appellant appeals from that resolution. We affirm.

I

MEPT is the owner of property in North Bergen and Secaucus, on which is a warehouse. The property is located in the Meadowlands District, where NJSEA regulates land use. In 2015, MEPT wanted to demolish its warehouse in order to build a larger one. To accomplish that goal, in accordance with N.J.A.C. 19:4-4.4 and N.J.A.C. 19:4-4.14, MEPT applied to NJSEA for a use

variance from zoning regulation N.J.A.C. 19:4-5.52(a) and for site plan approval.

Appellant owns property adjacent to the property on which MEPT's current warehouse exists. On appellant's property is a Home Depot and an undeveloped lot on which appellant plans to build a hotel. Appellant opposed MEPT's application, as did another entity, Vee Jay International (Vee Jay), which owned property adjacent to MEPT's, as well.

The NJSEA staff conducted public hearings on MEPT's application over the course of six days in the fall 2015. Both objectors participated in the hearings. Shortly before the sixth day of hearings, MEPT modified its site plan in order to meet some of Vee Jay's concerns. During the sixth day of hearings, MEPT recalled two of its experts to testify about the recent alterations to its plan. Both appellant and Vee Jay were unprepared to cross-examine the experts, so the matter was scheduled to continue on another day in January 2016 to permit the objectors to cross-examine and MEPT to conduct redirect examination on these experts, as well as allow the objectors to introduce evidence. Thereafter, at MEPT's request, that hearing was adjourned to March 2016.

A-0621-17T2

Meanwhile, in February 2016, MEPT sent a letter to NJSEA advising that MEPT had decided to "evaluate alternative designs for the proposed facility, which will necessitate submission of new plans and technical reports. The [a]pplicant therefore withdraws without prejudice the pending applications, and will resubmit new plans and applications at a future date."

Appellant then filed a motion with NJSEA requesting that MEPT's withdrawal of its application be deemed with prejudice or, in the alternative, that appellant be awarded the counsel and experts' fees and costs it incurred objecting to MEPT's application. Although NJSEA is a State agency, appellant's principal argument was that it was entitled to such relief pursuant to Rule 4:37-1(b).[1] From what we can ascertain from the record, the gist of appellant's argument was that MEPT withdrew its application because it feared the application was going to be rejected.

---

[1] Rule 4:37-1(b) provides in pertinent part:

> Except as provided by paragraph (a) hereof, an action shall be dismissed at the plaintiff's instance only by leave of court and upon such terms and conditions as the court deems appropriate. . . . Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

A-0621-17T2

In a resolution dated September 21, 2017, the Board denied the motion, providing its reasons in a written decision attached to the resolution.[2] Although the Board found Rule 4:37-1(b) in part governed the resolution of

---

[2] In June 2017, MEPT filed a new application for a use variance. In its moving brief before us, appellant contends the second application is identical to the one MEPT initially submitted. In its brief in response, MEPT maintains the application is different from the first in several material respects. In its reply brief, appellant again argues the two applications are the same, and filed a reply appendix that includes the transcripts of the hearings on the second application.

The hearings on the second application did not commence until April 2018. When it decided appellant's motion in September 2017, the second application was not before the Board and, thus, it did not consider it. In its reply brief, appellant argues the transcripts of the hearings on the second application support its position such application was the same as the first. In a motion MEPT filed to strike appellant's reply appendix and those portions of the reply brief that refer to or rely upon the appendix, MEPT argued appellant's position the two applications are the same is incorrect and the product of "cherry-picking" from the extensive record on the second application. MEPT further noted it cannot respond to the reply brief and provide reasons why appellant's assertion the applications are the same are unfounded by the record.

We entered an order that strikes from the reply appendix the transcripts of the hearings on the second application, as well as any arguments in the reply brief that rely upon the evidence adduced at those hearings. The Board did not take into consideration any of the evidence adduced during the hearings on the second application when it decided appellant's motion in September 2017. In fact, the hearings on the second application had not even concluded before MEPT filed its response brief before us. We do not consider evidence that was not presented to the Board and that was submitted by a party for the first time on appeal. See Townsend v. Pierre, 221 N.J. 36, 45 n.2 (2015).

the issue, after applying this Rule to the facts, the Board determined appellant was not entitled to relief under this Rule. However, for reasons unrelated to Rule 4:37-1(b), the Board found that MEPT's withdrawal of its application without prejudice was an appropriate disposition, and that MEPT was not obligated to compensate appellant for its fees and costs.

When evaluating the application of Rule 4:37-1(b), the Board found that when MEPT withdrew its application, the hearing on this matter was "far from complete." The NJSEA staff had yet to hear the cross-examination of MEPT's remaining witnesses, the testimony of the objectors' witnesses, the public's comments on the application, and closing arguments. More important, the Board observed that when MEPT withdrew its application, there was no indication of how the Board was going to rule. The Board therefore rejected appellant's claim that MEPT withdrew its application to preclude NJSEA from making a decision that would have been adverse to it.

As stated, the Board found reasons unrelated to the application of Rule 4:37-1(b) to support the withdrawal of MEPT's application without prejudice. The Board noted that permitting applicants to amend or resubmit applications to address concerns raised by objectors or by the Board should be encouraged. In its written decision attached to the resolution, the Board stated:

A-0621-17T2

> While [appellant] might have expected a conclusion to this matter and some semblance of finality, at this stage of the proceedings such expectations are unreasonable. Often in land use hearings such as this, applicants amend and/or withdraw and resubmit applications to address concerns raised by objectors and/or the governing authority. Such cooperation is encouraged and allows the concerns of the objectors to be addressed while at the same time protecting the rights of property owners. To suggest that an applicant may not withdraw an application to address such concerns would discourage cooperation and defeat NJSEA's ability to perform its stated mission.
>
> As the hearing was not complete and the procedures set forth in N.J.A.C. 19:4-4.14 had not concluded, MEPT's application was properly withdrawn without prejudice.

Although the Board did not specifically identify what its "mission" is, N.J.S.A. 5:10A-2(h) provides that one of NJSEA's goals or interests is to promote the economic growth of the meadowlands and northern New Jersey. Further, in February 2015, NJSEA and the New Jersey Meadowlands Commission merged and became collectively known as the New Jersey Sports and Exposition Authority. N.J.S.A. 5:10A-1 to -68. N.J.S.A. 5:10A-6 provides that, in addition to dissolving the New Jersey Meadowlands Commission and vesting in NJSEA the Commission's property, funds and assets, NJSEA shall carry out the purposes of N.J.S.A. 13:17-1. The latter statute declares that one of the purposes of the Hackensack Meadowlands

Reclamation and Development Act, N.J.S.A. 13:17-1 to -3.1, is "to reclaim, plan, develop and redevelop the Hackensack meadowlands." N.J.S.A. 13:17-1.

## II

On appeal, appellant asserts the following arguments for our consideration:

> POINT I:  THE NEW JERSEY SPORTS AND EXPOSITION AUTHORITY ACTED ARBITRARILY, CAPRICIOUSLY, AND UNREASONABLY IN DENYING TOWERS ASSOCIATES' MOTION TO TREAT MEPT LINCOLN CROSSING'S WITHDRAWAL OF ITS VARIANCE APPLICATION AS WITH PREJUDICE.
>
> POINT II:  ALTERNATIVELY, HAVING FAILED TO DISMISS MEPT'S APPLICATION WITH PREJUDICE, THE POLICY CONCERNS OF FINALITY, AVOIDANCE OF DUPLICATION, REDUCTION OF UNNECESSARY BURDENS, PREVENTION OF NEEDLESS LITIGATION, AND BASIC FAIRNESS UNDERPINNING RULE 4:37-1(b) REQUIRED THE BOARD TO GRANT TOWERS' MOTION FOR ATTORNEY AND EXPERT WITNESS FEES.

Our review of the subject resolution is limited.  "A strong presumption of reasonableness accompanies an administrative agency's exercise of statutorily-delegated responsibility."  In re Proposed Xanadu Redevelopment Project, 402 N.J. Super. 607, 632 (App. Div. 2008) (quoting Gloucester Cty. Welfare Bd. v. State Civil Serv. Comm'n., 93 N.J. 384, 390 (1983)).  A court

may reverse an agency's decision only if it "conclude[s] that the decision of the administrative agency is arbitrary, capricious, or unreasonable, or is not supported by substantial credible evidence in the record as a whole."  J.D. v. N.J. Div. of Developmental Disabilities, 329 N.J. Super. 516, 521 (App. Div. 2000).  That said, we are not in any way "bound by the agency's interpretation of a statute or its determination of a strictly legal issue."  Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973).

The term "arbitrary and capricious" in the law means having no rational basis.  Bayshore Sewerage Co. v. Dep't of Envtl. Prot., 122 N.J. Super. 184, 199 (Ch. Div.1973), aff'd., 131 N.J. Super. 37 (App. Div.1974).  In connection with administrative bodies, the term "means willful and unreasoning action, without consideration and in disregard of circumstances."  Ibid.

Having considered the record, the parties' arguments and the applicable law, we reject the premise Rule 4:37-1(b) governs the outcome here.  Appellant did not provide and we are unable to find any authority binding upon this court that supports its argument Rule 4:37-1(b) applies in an administrative proceeding.  Moreover, Rule 4:1 instructs that "[t]he rules in Part IV, insofar as applicable, govern the practice and procedure of civil actions in the Superior Court, Law and Chancery Divisions, and the surrogate's

9

courts and the Tax Court . . . ."  The decision under review here was made by a State agency in an administrative proceeding, not by the Superior Court in a civil action in the Law or Chancery Division, or by the surrogate's court or Tax Court.

Second, we are unable to find any authority that supports the premise NJSEA must order the withdrawal of an application of the kind here with prejudice, or that NJSEA has the authority to order a party to pay the counsel and experts' fees and costs of another.

We affirm NJSEA substantially for the alternate reason the Board provided in the resolution to deny appellant's motion.  As the Board noted, often in land use hearings applicants amend, withdraw and resubmit applications in order to address concerns raised by others.  The Board observed that such action allows the concerns of the objectors to be addressed while at the same time protecting the rights of property owners, and "to suggest that an applicant may not withdraw an application to address such concerns would discourage cooperation and defeat NJSEA's ability to perform its stated mission."

Here, MEPT advised the Board and the objectors that it withdrew its application because it wanted to evaluate alternative designs for the proposed

facility and, as it stated to the NJSEA staff and the objectors, voiced the concern such evaluation might require the "submission of new plans and technical reports." Considering the facts as they existed when the Board denied appellant's motion in September 2017, appellant provides no reasonable basis to preclude MEPT from withdrawing the first application without prejudice and submitting a new one, or to compel MEPT to pay for appellant's fees and costs.

One of the NJSEA's statutory goals is to promote development in the meadowlands. See N.J.S.A. 5:10A-6 and N.J.S.A. 13:17-1. NJSEA's essential finding is that appellant's position would be antithetical to development. Problems with an application are often discovered and exposed during the hearing process. After all, the fundamental purpose of a hearing is to examine an application and determine if there are any flaws that will make its approval problematic.

An applicant will be deterred from submitting an application for development if it knows that, if a problem is discovered during the hearing and the only remedy is to withdraw the application, the applicant must bear the fees and costs of another party, or be precluded from filing a new application if the original one is deemed withdrawn with prejudice. Even if there are no

11

problems with an application, an applicant may have sound reasons to alter its plans and wish to withdraw its application and file a new one. An applicant will be deterred from filing an application under such circumstances, as well.

We are not unmindful of appellant's contention that it was unfairly caused to expend its resources a second time in order to object to the second application because, according to appellant, the second application was the same as the first. However, that issue is not before us. The Board did not make nor could it have made the determination whether the first and second applications were the same but, even if it determined they were, the Board is not precluded from considering other reasons bearing on the question whether appellant is entitled to the relief it seeks.

Accordingly, under the specific factual circumstances presented here, we discern no reason to conclude the Board's ultimate decision to deny appellant's motion was arbitrary, capricious or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0621-17T2